JOHN PERKINS, APPELLANT, *v.* EDWARD P. FOURNIQUET AND HARRIET, HIS WIFE, AND MARTIN EWING AND ANNE, HIS WIFE.

Releases given by the complainants, in the present case, decided to cover the matters in controversy, and, therefore, to put an end to all claim by them; inasmuch as there is no proof that they were obtained by fraud or circumvention.

THIS was an appeal from the Circuit Court of the United States for the Southern District of Mississippi.

The case, in some of its branches, had been before the court three times before. A motion to dismiss a case between the

same parties, at January term, 1848, is reported in 6 Howard, 206. It came up again at January term, 1849, and is reported in 7 Howard, 160. Again, at December term, 1851, a dispute, growing out of the same matters, was before this court, and the judgment of the court below affirmed by a divided court. Consequently, it was not reported; but the mandate, which was issued therein, gave rise to a difficulty, which will be the subject of the succeeding case in this volume. Ewing and wife were parties, together with Fourniquet and wife, to the present suit, but the controversy cannot be distinctly understood, without a reference to the case in 7 Howard, 160. The family connection of the parties is there explained.

The present claim of Fourniquet and wife, and Ewing and wife, against Perkins, was founded on the alleged rights of the marital community of Mrs. Perkins (the mother of Harriet and Anne) with Mr. Perkins, according to the laws of Louisiana.

The bill alleges the marriage was consummated in Louisiana, where both the widow Bynum and the defendant Perkins were then citizens; and that the defendant always retained his legal and political domicil in Louisiana, though some time after the marriage, for the ostensible purpose of health, established a family residence near Natchez, in the State of Mississippi. The bill charges, that defendant, during the marriage, expended of community funds, in the State of Mississippi, in permanent investments of real estate, an amount of about $39,600, which remained in kind at the dissolution of the marriage by the death of his wife in 1824, but which he has since sold and disposed of to his own use. That defendant had no revenues or resources in Mississippi from which these investments were made; but it was all derived from the revenues of his and his wife's property and cotton estates in Louisiana, and were partnership funds, in which complainants, as heirs of their mother's community, had rights of partnership, and now have right to hold defendant to account therefor. They charge, that if defendant intended and expected to get an advantage to himself, by investing the community funds in the State of Mississippi, rather than in Louisiana, then it was a fraud on his part, for which he is liable; or, if intended in good faith, yet such investment charged defendant with a trust, for which they pray he may be held responsible.

But complainants aver, that as defendant has heretofore kept back and concealed from settlement this investment and never accounted for the same, but in settlement with them obtained their receipts and release in full, in which this matter was not included, that said releases, so far as they may be invoked to

bar this claim, were obtained by fraud and circumvention. And they declare the matters of this bill were kept back by defendant, and never accounted for. And they call on defendant to produce the account and items rendered by him when he obtained these releases, and show for what they were given.

They aver, too, that Harriet's release was given while she was yet a minor.

They pray for an account of proceeds, or amount of said investment, with eight per cent. interest, and for general relief.

### *Answer.*

Defendant, in his answer, admits the marriage in Louisiana, admits the parties, and admits substantially the investments made in the State of Mississippi. But qualifying and explaining, says: That same year of the marriage he and his wife removed to the State of Mississippi, and continued their domicil there during all the time of their married life, which terminated by the death of his wife on the 12th August, 1824. That this removal was in pursuance of an understanding had between them before marriage with a view to health, and facilities of educating the children. Admits he retained some political rights in Louisiana after his removal till 8th of June, 1821; but says his civil domicil was changed as aforesaid, and on this allegation predicates his first and principal ground of defence, viz., that by reason of this domicil "respondent has always acted under the belief that there was no community of acquets and gains of property, lying in Louisiana, between respondent and his said wife under the laws of Louisiana."

As a second ground of defence, he submits, also, that if, as alleged in said bill, the domicil was not changed, yet, as head of the community, he was entitled to the absolute disposal of the acquets and gains, without accountability to his wife, or her legal representatives.

As a third ground of defence, denies that the investments in Mississippi were made with money to which his wife had any legal or equitable title whatever. And denies they were made to gain any unjust advantage over his wife or her heirs.

Fourth point of defence is matter in abatement, in which defendant assumes, that if liable to the demand made in said bill, it is only to an administrator of his wife's estate, and not to the complainants.

Fifth ground of defence is, that he has obtained the releases of complainants for all claims on account of the estate of their father and mother, and relies upon them as if formally plead in bar, denying they were obtained by fraud or concealment.

Sixth ground of defence submits that if said investments were made with money in which his wife had an interest, yet that defendant is entitled to the property, as tenant by curtesy during his natural life; and he interposes this right as if plead in bar.

Upon the final hearing, the Circuit Court passed the following decree:

### In Chancery. Final Decree.

The report of William H. Brown, Master in Chancery, made in the above-stated case, and filed herein on the 3d day of April A. D. 1850, having been confirmed on a former day of this term; and the report of said Master made herein and filed on the first day of October, A. D. 1850, having also been confirmed on a former day of this term, except as to the said sum of five hundred dollars therein stated as having been paid by defendant subsequent to the death of Mrs. Perkins, wife of said defendant: It is now thereupon further ordered, adjudged, and decreed, that the said complainants, the said Harriet J. Fourniquet, together with the said Edward P. Fourniquet, in right of his said wife, but to her sole and separate use; and the said Ann S. Ewing, together with the said Martin W. Ewing, in right of his said wife, but to her sole and separate use, do have and recover of the said defendant, John Perkins, the amount stated in said first-named report, to wit, the sum of sixteen thousand nine hundred and sixty-eight dollars and seventy-six cents ($16,968.76,) to be paid to the said complainants by the said defendant within thirty days hereafter, together with interest thereon at the rate of eight per cent. per annum, from the first day of April, 1850, or in default thereof that said complainants have execution therefor. It is further ordered, adjudged, and decreed, that said complainants do recover of the defendant all their costs hereby in this suit incurred and herein taxed.

November 20, 1850.                                S. J. Gholson.

From this decree Perkins appealed to this court.

It was argued by *Mr. Johnson* and *Mr. Soule,* for the appellant, and *Mr. Henderson,* for the appellees.

It is not necessary to state the points and arguments of the counsel relative to the community of acquets and gains under the law of Louisiana, and how far that law would reach investments in Mississippi; but as the decision of the court turned entirely upon the validity of the releases (one of which is inserted in 7 Howard, and both in the present opinion,) the notice of the argument will be confined entirely to that subject.

The counsel for the appellant considered the releases in the following point of view:

The bill charges that these releases were obtained by concealment, fraud, &c. The answer denies the charge in the most positive terms, and not a shadow of proof has been given of its truth.

The releases themselves are as full and thorough acquittances of all responsibility on the part of the respondent, as could have been drafted, as will be seen by reference thereto.

To the release of E. P. Fourniquet and wife to J. Perkins, dated Natchez, May 27, 1834.

To the release from M. W. Ewing and wife, dated April 11, 1828.

To the release of Benjamin S. and Mary C. Bynum, (heirs, but not parties to this suit,) April 10, 1829.

Act of confirmation by Mary C. and Thomas P. Eskridge, dated April 9, 1832.

For what were these releases made? Surely not to cover the land and slaves in Louisiana of the deceased parents of the releasors, because there had been previously (in 1827) a judicial partition and distribution of their patrimonial estate, which had been homologated, and had all the force of "the thing adjudged;" and Perkins had been fully discharged before any of these releases were executed. Then, these releases must have been wholly supererogatory in reference to the land and slaves in Louisiana; and the question arises, what could they have been designed to cover and include, unless it were such personal effects as may have remained, after all the debts and expenses of the marriage and the education and maintenance of the Bynum heirs had been defrayed?

As to the validity and effect of these releases, one of them has been attested and adjudicated, not only in the Ninth Judicial District of Louisiana, and before a jury, but in the Supreme Court of the United States.

Howard's Reports, vol. 7, contains the recitals, in Mr. Justice Daniel's opinion, showing that Fourniquet and wife sued Perkins for large amounts of property, spoliations, &c., in Concordia, Louisiana, in December, 1838, and that judgment was rendered against them in December, 1840; and that, having brought suit against him in 1844, in the United States Circuit Court for Louisiana, Perkins pleaded that judgment in bar, and prevailed both in the Circuit and Supreme Courts of the United States.

True, the opinion of Judge Daniel was rejected, as evidence, in the United States Circuit Court for Mississippi; but whether the objection was well taken or not, the weight of it, as an argument and an authority directly in point, could not be destroyed,

27 *

and it applies with equal force to the release of Ewing and wife. See the case at large in 7 How. 160.

"The gratuitous remission of a debt, is as valuable as a release for a valuable consideration, and may be express or implied." Civil Code, Art. 2195.

"The *pactum remissorium, pactum de non petendo,* was binding under the Roman law; and all that was required to give it validity, was a simple convention. Mouton v. Noble, 1 Annual Reports, 194.

See also the case of Morgan v. Morgan, 5 Annual Rep. 230. [An authentic MS. copy of the record in this case, is on file at the Supreme Court of the United States, showing remarkable coincidences between the release in that case and the case at bar.]

The law presumes the acceptance of the remission of a debt, and it cannot be revoked by creditors. Civil Code, 21, 97; Lee v. Ferguson, 5 Annual Rep. 533.

For the force, as testimony, of sworn answers in chancery, see 2 Story's Equity Jurisprudence, §§ 1528, 9, 30.

m          m

*Mr. Henderson,* for the appellees.

We come next to consider the question of the receipts and releases, interposed in bar.

The bill charges fraud and concealment in obtaining from complainants these receipts, and declares the matters sought to be recovered in this suit, were not, at the time of these receipts, or at any other time, ever accounted for, but by defendants were concealed and kept back; and they require and demand of defendant, should he offer said receipts in bar, that he produce the account, and the items thereof rendered, for which said receipts were given.

The defendant tenders the releases as exhibits, with his answer, and states that he "relies upon said releases as if formally pleaded in bar," and denies, generally, they were obtained by fraud or concealment. They are found in the record, but in no form of plea. Now, while rule 39 permits a defendant to avail himself in his answer of matters in bar, if the matter be such as could be plead in bar, yet the rule does not allow that to subserve as a bar in an answer, which could not have been plead in bar. The alleged release of Harriet Fourniquet is not good in bar, because the deed of a married woman, not proven or acknowledged on privy examination, and therefore void. Agricultural Bank v. Rice, 4 How. 241, 242; 12 Pet. 375; 10 Pet. 20 and 22.

This release is void, also, because executed by her while a minor, as charged in her bill, and admitted by defendant's

answer to interrogatory 4. Her subsequent recognition of it, before a Judge in Louisiana, (not on private examination,) gave it no additional validity. Void as the deed of a married woman in its execution, it could not be validated by her subsequent recognition of it.

The receipt of Ewing and wife is not under seal, and therefore not good in plea of bar as a release. Story, Eq. Pl. § 796; Mit. Pl. marg. 263.

But complainants have impeached, by their bill, the integrity of these receipts, so far as offered by defendant to evidence a release, or settlement, of the community sued for, and call upon defendant for a disclosure of the consideration on which they were executed.

The defendant denies fraud generally in their procurement, but makes no disclosure of the matters or accounts settled by the receipts. Nor does he venture to affirm they were given on settlement of the community; yet tenders them as "releases, as if formally pleaded in bar," notwithstanding.

Such form of pleading and issue make no ground of defence, and must be overruled and disregarded, as if not in the record. Story, Eq. Pl. § 796, 797; Mit. Pl. marg. 261, 262, 263.

If it be said, however, that these receipts were executed for the meridian of Louisiana, and not intended for common-law instruments, (though both made in Mississippi,) their deficiency in this aspect is still more palpable. For, professing to evidence the settlement of Perkins's account as tutor or guardian of the Bynum heirs, they are "null and void," because they do not show, on their face, that a full account and a delivery of vouchers was rendered the wards, ten days previous to signing the receipts. O. C. 72, art. 76; 4 How. U. S. R. 561; C. C. art. 355; 4 Rob. 296, 297.

And the civil-law doctrine of "transactions" and "remission" of debts, was never extended, and will not be in equity, to settlements of guardians with their wards.

And the defendant's answer in this case is quite demonstrative, that he never settled in any way with complainants for their mother's community. He says, "By reason of their domicil being in the State of Mississippi, respondent has always acted under the belief, and now submits to the court, by way of defence to the claim of complainants, that there was no community of acquets and gains of property lying in Louisiana, between respondent and his said wife Mary, under the laws of Louisiana."

If there be any meaning in language, this surrenders the fact, and admits the community not settled for.

For, if Perkins "always acted under this belief," he so acted

when he obtained these receipts. It is conclusive, therefore, he did not settle with or compensate complainants for the community. And he waives such defence in this part of his answer, by submitting the question of community or no community to the court, and to abide that issue. If he has bought out this claim, why not show the evidence of his purchase, rather than submit the issue to the court that it never existed?

But the receipt of Ewing and wife is also express and conclusive, against this pretence of defendant. It particularly and exactly enumerates what things were settled for, and what he received. And by reference to the inventories returned by Perkins himself, the eighteen slaves, specified in the receipt, are found in inventories. The cattle, mules, and tools, all are there shown, and all of the Bynum estate. There can be no mistake in this proof. And it was no such grace on Perkins's part, that he relaxed his hold on this fraction of their father's estate, as thereby to absolve himself from community.

But the record, elsewhere, abounds with evidence on this point. On pages 71 to 76, defendant sets forth the several parcels of land purchased by him chiefly in Louisiana, during the coverture; and all such are community lands, if a marital partnership existed. And Mrs. Perkins's children were jointly seised of the title with him, at the instant of her death. Now can such receipts as here exhibited, by any stretch of presumption, be regarded as transmissive of their joint title, with Perkins, to these lands? Even if intended as such, they obviously fail as relinquishments of title to real estate.

But had this been the purpose, it is incredible of belief they would have been so executed. For the title which the heirs of Mrs. Perkins have in her community, would sustain an ejectment against Perkins, or even against a third possessor under Perkins without notice. See 5 An. Rep. 389; 2 Id. 261.

Now these Mississippi investments of $29,000, were but part of the whole, and with like certainty were not accounted for in these receipts.

They do not show they included or comprehended the community, but we think on their face they reasonably show the contrary, and the defendant shrinks from the averment that they did or do include it. He offers no proof that they did, and he evades reply, when called on to show the matters and things on which they rested, and says he always acted under the belief there was no community, and submits that issue to the court. Aside from their defective execution to make them releases, and apart from the mispleading them in bar, we think it impossible to believe they did settle for community, or were intended, by those who gave them, to comprehend that subject.

The rule in equity, and of the most common justice, then applies, that these receipts shall be held valid only for the matters and things on which they computed. And this, with such legal distrust as the relations of the parties imply. 10 How. 185, 186; 8 How. 158; 4 How. 561; 16 Pet. 276, 7, 8, 9; 2 Sum. 11; 3 Story, R. 268, 9; 1 Ed. Ch. R. 38, 39; 1 Ch. & Lef. 226.

The case of Fourniquet and wife *v.* Perkins, (7 How. 160,) is referred to and relied on as deciding these receipts valid against us. But the case quoted decides no such principle. It sustained a plea of *res judicata.* And the case plead in bar, did interpose these receipts, among other matters of defence, in a suit brought exclusively to obtain against Perkins a new account of his administration of the Bynum estates, but not for community. We were defeated in that case. And Judge Daniel said, from inspection of the record, that it did not appear we were defeated merely on the receipts, but on the merits. We admitted then, and admit now, these receipts were given to close Perkins's administration of the Bynum estate, but not community in the Perkins estate. The decision of that case does not therefore touch these receipts. They have only been decided in this case below, and in the case of Perkins *v.* Fourniquet et al. (6 How. 206); and in both decisions it has been held that these receipts did not bar this action for community.

One other, and the last point, on this subject. Both these receipts recite and count on administrative settlements, by Perkins, of Benjamin Bynum's estate, or of Mrs. Perkins's separate estate, in his capacity of guardian, curator, or executor.

Now it is familiar to the jurisprudence of Louisiana, as shown in the decisions herein quoted, that the formal and official administration of the wife's estate extends only to her separate estate, and not to her community. Perkins, in this case, as surviving partner, would, and did, have the settlement of community, and not as curator of the Bynum estate, or as administrator or executor of his wife's estate. His right, power, and duty to settle the community, resulted wholly and exclusively from his being the surviving partner in community. And his accountability for the wife's share in community was directed with her heirs, and not her administrator. And this is manifest from the right of the heirs to renounce community. O. C. 338, arts. 72, 75, 82, 84.

And there is no fact or circumstance in this case that points, in the remotest degree, to any settlement made by Perkins as surviving partner of the community. No partition with the heirs is shown; no purchase from them of their undivided portion is shown; and, upon all known principles of human action, it is impossible to believe that either of these things was done,

and being done, that the evidence of it was incorporated in these receipts.

Mr. Justice WAYNE delivered the opinion of the court.

This is an appeal from the Circuit Court of the United States for the District of Mississippi, the District Judge presiding.

The suit was brought in the Vice-Chancery Court of Mississippi, and was transferred to the Circuit Court, upon the application of the respondent, under the 12th section of the act of September 24th, 1789, to establish the judicial courts of the United States.

Harriet J. Fourniquet and Anne M. Ewing are the step-daughters of the respondent, from his intermarriage with their mother, Mary Bynum. She was the widow of their father, Benjamin Bynum.

The object of the suit was to recover their portion of $39,600, alleged by them to be marital community gains of the respondent and their mother, which they charge he invested in Mississippi, and was in hand at the death of their mother. The respondent is charged with having had no means of his own to make such investments; that the money was derived from the cotton estate in Louisiana; that the same, by the laws of that State, became a community of acquets and gains, one half of which, upon the death of their mother, became theirs and her other heirs; and they charge him, further, with having fraudulently taken the money derived from the Louisiana property, into Mississippi, to invest it there, in order to give him undue advantages over his wife's and their interest in the fund. It is said, that at the death of their mother there were then living four children of the first husband, and three by the respondent. Three of the four and two of the three are still living. Mary B. Eskridge, one of the survivors of the Bynum children, and John Perkins and William Perkins, adults and heirs of the complainant, do not concur with them in their suit, and for that reason are not made parties. The respondent, besides being charged generally with fraud, is especially so in reference to certain receipts and releases, which these complainants gave to him, which they now say were obtained by concealment and circumvention.

The respondent, in his answer to the bill, admits his marriage in Louisiana, at the time and place stated. That he removed to Mississippi with his wife in 1818; that their domicil was there continued to be kept during the coverture, and that their removal was not only with the consent of the wife, but in pursuance of an understanding between them before their marriage

took place. He denies that any community of gains was established conventionally, or that it legally could occur under the law of Louisiana, on account of the residence of himself and wife in that State when they were married, because it was their intention, before the marriage took place, to remove into Mississippi. He denies that any money, invested by him in lands in Mississippi, belonged, either legally or equitably, to his wife in either State; and asserts, even if there was a marital community between them, he was entitled to dispose of the gains as he pleased, without any liability, under the law of Louisiana, to account for the same to his wife or her representatives. He denies the charge, that he was without productive property or available means to purchase the property in Mississippi. That property consists of several tracts of land and the improvements put upon them, as is said, by community funds. The tract upon which the improvements were put contained one hundred acres. It was bought from Arthur Mahan, on the 30th October, 1818, for $9,926. It was improved for a residence for the respondent with his family, including the children of the wife by the first husband. There was another tract, containing 2,100 acres, bought by the respondent from Elihu Hall Bay, in January, 1819, for $5,000. There were two other purchases,— one of them, a lot in Natchez, bought from Walter S. Parker, in March, 1823, for $600; and the other is a purchase from Sugar Zenor, in March, 1824, for $1,000. The aggregate sum given for these lands, and the improvements upon the first, amount to $39,600. The complainants allege, that they have a right to elect to take their interest in them in money, with interest upon the amount from the time of their mother's death.

To this answer, the complainants filed the general replication.

The case was tried, and the court below gave an interlocutory decree against the respondent. It declares that a community of gains had existed between the respondent and his wife during the marriage. That its resources were altogether in Louisiana, and that the respondent had invested from the gains large sums in the purchase and improvement of real estate in Mississippi, and that it was held by him, in 1824, when the marriage was dissolved by the death of Mrs. Perkins. The court also referred the matter to a master, to take an account conformably to its decree. In the course of the reference, the master sustained an objection to an allowance for which the complainants contended. It was submitted to the court, whether he had properly refused it. He was instructed, that it was only necessary for him to ascertain the amount of the funds vested by the respondent in Mississippi during the community; and that, as to the source

from which Perkins derived them, the court would decide under all the proof. The master proceeded accordingly. He reported, without any proof of the source from which Mr. Perkins obtained the money, that $16,968.76 was due to the complainants. The report was subsequently confirmed, and the court gave a final decree for them for the sum just stated, with interest, at 8 per cent. from the 1st April, 1850.

It does not appear that the court's attention had been particularly directed to the releases which the complainants admit they gave to the respondent, and which he says were given to him with a positive denial of the statement, that he obtained them by fraud, concealment, and circumvention.

If it had been, we think that the court would have determined the effect of the releases upon the case before it gave its interlocutory decree, and that it would not have made a final decree upon the master's report.

We proceed to give our view of these releases.

The first, from Ewing and wife, was executed on the 11th April, 1828. Fourniquet and wife executed theirs on the 27th May, 1834, within a month of six years after the other.

They are as follows:

### Release from E. P. Fourniquet et ux. to John Perkins.

Received, Natchez, May 27th, 1834, of John Perkins, on settlement of all accounts, debts, dues, and demands, whatever, up to the present day, one hundred dollars in full, having, on a previous occasion, received from him, as the guardian of my wife, Mrs. Harriet J. Fourniquet, late Miss Bynum, all the estate, portion, and share, which she inherited by the death of her late father, Benjamin Bynum, late of Concordia, Louisiana, deceased, or her mother, Mrs. Mary Perkins, of the county of Adams, and State of Mississippi, and brother, Benjamin S. Bynum, of the county of Clairborne, and State last aforesaid, deceased; and do, by these presents, jointly with my said wife, release and forever discharge the said Perkins, from all and every claim which she, or either of us, might or could have against him, the said Perkins, either as guardian or otherwise, growing out of the estates aforesaid, or in any other matter and shape whatsoever, and forever exonerate him, by these presents, his heirs and executors and administrators therefrom.

[In] witness whereof, we have hereunto set our hands and seals, the day and year first above written, to wit, in the year of our Lord, one thousand eight hundred and thirty-four, in the presence of Elijah Bell and John E. Maddux, whose names are hereunto subscribed, as witnesses hereunto, the said John Per-

kins being also personally present, and by these presents accept-

E. P. FOURNIQUET.     [SEAL.]
HARRIET FOURNIQUET. [SEAL.]
JOHN PERKINS.         [SEAL.]

Witnessed, signed, sealed, and delivered, in the presence of—

ELIJAH BELL,
JOHN E. MADDUX.

### Release from M. W. Ewing to John Perkins.

Received of John Perkins two negro slaves, Lewis and Anderson, also his draft on A. Fisk, for four hundred and seventy dollars, thirty-four cents, in one ,hundred and twenty days, indorsed by R. M. Gaines; which, when paid, will be in full of all claims and demands, of every kind and description, which we, or either of us, may have against said Perkins individually, or against him as curator of the estates of Benjamin Bynum and Mary Perkins, in the parish of Concordia, State of Louisiana, or as executor of the will of the said Mary Perkins, dated March 30, 1822, and in full of all claims of every kind, which we or either of us, may have against said Perkins, in any way whatever; we having received from said Perkins, heretofore, the following named slaves, to wit: Judah Myers, aged 25 years; Edward, about 4 years; Harry, about 7 months; Little Daniel, about 16 years.; Patrick, 13 years; Lewis 5 years; Big Daniel, 50 years.; Big Sarah Miambo, about 50 years; Ned, 16 years; Polly, 14 years; Frank, about 50 years; Maria, his wife, 37 years old; Frank, aged about 1 year; Fanny, about 7; Samuel, about 19 years. Also two mules, thirty head of cattle,.and a chest of tools; and the said Perkins accepts hereof, as a full satisfaction and discharge from the said Martin W. Ewing, and Anne, his wife, in the premises.

Witness our hands, this 11th day of April, A. D. 1828.

MARTIN W. EWING,
ANNE EWING.

Att. R. M. GAINES.                        JOHN PERKINS.

The operative words of these releases are as full as they can be, and they cover the subject-matter for which the complainants brought the suit.

We have carefully examined and considered this record, without finding in it any thing against the fairness of the releases. The complainants do not give any proof against it. Nothing is in proof from which it can be inferred that they were given in ignorance of their rights in the estates of Benjamin S. Bynum and Mary Bynum when the releases were made, or that they were in any way circumvented by the respondent. Their testimony in the case is exclusively upon the community of gains,

and upon the inability of the respondent to make such purchases and improvements from his own means.

It consists of copies of conveyances for the property bought, of depositions, in which there is not a word relating to the releases, and of answers by the respondent to other suits against him, one of which was a suit in equity brought by these complainants in the Circuit Court of the United States, in Louisiana.

In that answer may be found a narrative of the respondent's business connection, and dealings with the estate of Benjamin S. Bynum and that of his widow, afterwards the wife of the respondent. It shows that he rendered an account of both. That it was done in an open manner and with an intention that it should be examined by those who were interested. It is further shown, that after the accounts had been officially filed, that there was a partition of all the property among the heirs, and that it was consummated by receipts and acquittances from all of them, among them those given by Ewing and his wife, and by Fourniquet and his wife, as they have been already recited in this opinion. The respondent also denies in that answer the charge there made by these complainants, as it is repeated in this suit, that these acquittances were obtained by fraud, misrepresentation, and concealment, and avers that they were executed by the parties with a full knowledge of all their rights, and for a valuable consideration. In that case, as in this, there was no proof that those receipts or releases were fraudulently obtained. The witnesses, Henderson, Montgomery, and Walworth, in this suit, are not questioned as to the execution of the releases. The same interrogations were put to all of them. The answers of each are very immaterial for any purposes in this suit. No one of them knew any thing concerning the respondent's pecuniary situation when he married, or when he removed into Mississippi, or of the sources from which the money came which was invested in Mississippi. The same may be said of Wren's testimony. Loria's testimony is as indefinite as that of the others, and he also was not questioned concerning the execution of the releases. On the other hand, the evidence produced by the respondent in this suit, shows that the releases were not precipitately made. That neither of the complainants gave them until after they had had time to examine his accounts, and not until they had examined them. Whatever they may have thought of the integrity of the respondent, they did not act then as if they suspected it. We see them receiving from him their portions of the estates, of which they were distributees, and other property besides, as gratuities from the respondent, and dealing with both, among themselves and with others, and acting towards the respondents as if they were

content with what he had done, and with what they had received.

There was an interval of five years and eleven months between the releases given by the complainants to the respondent. The accounts upon which they were given, were all that time accessible to them. The proofs show that Ewing had scanned them before he gave his release. His interest in the estates were the same as Fourniquet's. It was a family business, talked of, no doubt, among themselves, as such matters always will be, and it cannot be supposed that Fourniquet took his wife's portion of the estates without knowing that Ewing had given to the respondent a release when he took his wife's part, or without having had the same means as his associate to learn the condition of the estates, and the truthfulness of the respondent's official statement of them. Their acceptance of the portions of their wives must be taken as an admission that the respondent had dealt fairly in the business, and that he meant to do so, until they shall prove that it was his design to cheat all of the heirs, including his own children, as well as the wives of the complainants. He may not have acted in his long management of the estates, with all caution and exactness, but nothing has been shown in this case, in his final settlement with the heirs, that he did not mean to act with fairness and liberality, or that any one of them did not think he had done so, when they made these releases.

With the view of these releases, we think that the court erred in giving its interlocutory order for an account to be taken. We are relieved by it from considering the points which were made in the argument concerning any community of gains between the respondent and his wife. However that may have been, the releases put an end to all controversy between these parties about it. They were fully argued by counsel, as they should have been, as they could not foresee what would be our view upon the effect of the releases. We could not add any thing to the decisions of the courts of Louisiana upon connubial or legal communities of gains between husband and wife.

We are satisfied, whether it did or did not exist, that the releases given by the complainants are conclusive against them for any claim upon the respondent on account of the estates in which they were interested. No proof having been given that these releases were obtained by any fraud or circumvention, we shall order the decree of the court below to be reversed, and that the bill of the complainants shall be dismissed.

Mr. Justice CURTIS dissented.

## Order.

.This cause came on to be heard on the transcript of the re-
:cord from the Circuit Court of the United States for the South-
ern District of Mississippi, and was argued by counsel.   On
consideration whereof, it is now here ordered, adjudged, and
decreed by this court, that the decree of the said Circuit Court in
this cause, be, and the same is. hereby, reversed, with costs, and
that this cause be, and the same is hereby, remanded to the said
Circuit Court, with directions to dismiss the complainant's bill.