## Engemann, et al. v. Allen, Trustee.

(Decided December 21, 1923.)

## Appeal from Allen Circuit Court.

1. Mines and Minerals—Representations as to Future Production of Oil Well Mere Expression of Opinion.—Any representation of the future production of oil wells on sale of a lease is a mere expression of opinion as to expectations and probabilities, and will not constitute fraud, even though it turn out to be untrue.

2. Vendor and Purchaser—Purchaser Entitled to Compensation in Case of Deficiency.—Even where land is sold in gross, the purchaser is entitled to compensation for deficiency in acreage, where the deficiency is as much as, or more than, 10 per cent.

3. Mines and Minerals—Purchaser of Lease Entitled to Compensation for Shortage in Acreage.—A purchaser of an oil lease was entitled to compensation for shortage in acreage, where the deficiency was 103 acres in a leasehold supposed to contain about 200 acres.

HARPER & DENTON for appellants.

W. D. GILLIAM for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

On January 15, 1921, Alex Allen, trustee for the Allen-Gwynn Oil Company, a partnership, by A. K. Parsons, manager, entered into a contract with Max Engelman, Karl Aichelen and Math Graft to transfer and assign to them part of an oil and gas lease on the lands of P. G. and L. Graves. Though the contract recited a consideration of $60,000.00, it is conceded that the actual consideration was only $40,000.00. After a general description of that part of the lease conveyed, the following appears: "The land conveyed includes all of the wells and equipment thereon, and contains 200 acres, more or less, the exact acres not known." On January 20, 1921, that part of the lease covered by the contract was transferred to the purchasers by written assignment, which, after setting forth the description contained in the contract, added the following: "Not knowing the exact number of acres conveyed by that part of lease which is hereby conveyed, but supposed to contain 200 acres, more or less." Of the consideration agreed to be paid, $10,000.00 was paid upon the execution of the contracts and $5,000.00 a few weeks later.

The purchasers took possession of the lease, made some improvements thereon and appointed an agent to look after and develop the property.

Charging that they were induced to purchase the lease by the false and fraudulent representation of the defendant that there were 200 acres in the lease, and that there were ten wells on the land and no dry holes, and that five of them had been rigged up for pumping and would easily make forty barrels per day, the purchasers brought this suit to rescind the contract, or, if the court should hold that they were not entitled to that relief, to recover the sum of $20,600.00 for shortage in acreage. On final hearing the chancellor dismissed the petition, and gave defendants judgment on their counterclaim for $10,000.00 with six per cent. interest from April 15, 1921, and for $15,000.00 with interest from May 15, 1921, until paid, and provided that executions might issue for these sums. The purchasers have appealed.

On the question whether there were any dry holes on the property, the evidence is conflicting, and we see no reason to disturb the finding of the chancellor.

With respect to the production of the wells, the allegation of the petition is that "five of them had been rigged up for pumping and would easily make forty barrels per day," and the proof related to future production instead of to past or present production. Nothing is more uncertain than the production of oil wells, and any representation as to future production is a mere expression of opinion as to expectations and probabilities, and will not constitute fraud, even though it turn out to be untrue. Burwash v. Ballou, 230 Ill. 34, 82 N. E. 355, 15 L. R. A. (N. S.) 409; Kendrick v. Ryus, 225 Mo. 150, 123 S. W. 937, 135 A. S. R. 585; 12 R. C. L. 252.

But the deficiency in acreage presents a more serious question. It is clear that the parties traded on the basis of there being about 200 acres in that part of the lease assigned. Indeed, the number of acres was discussed before the transaction was closed, and after the attorney explained that the words, "more or less," would cover an excess or deficiency of ten per cent. the quantity was described in the contract as "200 acres more or less." It is the settled rule in this state that even where land is sold in gross, the purchaser is entitled to compensation where the deficiency is as much as, or more than, ten per cent. Byrn v. Andrew, 189 Ky. 274, 224 S. W. 768,

and this rule applies to oil and gas lands as well as to agricultural lands, since acreage is just as important in the one case as in the other. Caudill, et al. v. Bernheim, et al., 194 Ky. 368, 238 S. W. 1041. In this case there is a deficiency of 103 acres in a leasehold supposed to contain 200 acres more or less, or a deficiency of more than fifty per cent., and it would be violating the settled law of this state to hold that the parties contemplated that there might be such an unusual deficiency. As the leasehold was sold for $40,000.00, and as containing 200 acres, we conclude that appellants are entitled to be reimbursed for the deficiency of 103 acres at the rate of $200.00 an acre, or in the sum of $20,600.00, and that this sum should be properly credited on the judgment rendered in favor of appellee.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.