## Young et al. v. Hill et al.

(Decided Jan. 10, 1933.)

(As Modified on Denial of Rehearing March 14, 1933.)

KIRK & WELLS and GROVER F. HEDGES for appellants.
FRED HOWES and O. W. CAIN for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming in part and Reversing in part.

Estill Hill sued the Mylyn Oil Company, a corporation, on two notes of $500 each, and for $93.48 for labor performed for the company as foreman and pumper. The notes represented accrued wages owing him for the same kind of work. An attachment was issued and levied upon two oil leases known as the Skaggs and the Wallin leases and equipment thereon. Default judgment was rendered and the attachment sustained. A special commissioner was appointed to sell the property. Before that could be done, however, the appellant Figley-Day & Co., a corporation, filed a suit in equity against Hill and the commissioner, asserting ownership of an undivided half interest in the Skaggs lease, and alleging that it had not been made a party to the suit in which the sale was to be made. At the same time J. P. Young sued Hill, the commissioner, the Mylyn Oil Company, and the Charleston Trust Company, alleging that he had a first mortgage on the Skaggs lease; that the trust company held a second mortgage on it; and that neither of the mortgagees nor Figley-Day & Co., had been made parties

to the suit. The plaintiff asked that his lien be enforced. In both of these suits injunctions prohibiting the sale of the property were asked and granted temporarily. The Charleston Trust Company also came in and set up its mortgage on the property.

The cases were afterward consolidated and appropriate pleadings presented issues upon which evidence was heard. Judgment was rendered in favor of Hill for his debt against both the Mylyn Oil Company and Figley-Day & Co. He was adjudged "first, prior and superior lien" on the property, under the terms of the mortgage and contemporaneous contract of the Mylyn Oil Company and Young and by reason of his attachment. No laborer's or mechanic's lien had been asserted or is involved. Young was adjudged to have a second and the Charleston Trust Company a third lien. A sale of the property was ordered for the purpose of satisfying the liens.

The appeal is brought by Young and Figley-Day & Co. and presents two questions: (1) Whether the court erred in rendering a judgment against Figley-Day & Co. for the amount of Hill's claims, and in addition adjudging a lien against that company's half interest in the lease to secure payment thereof; and (2) priority of Hill's lien over Young's mortgage. The decision of the case depends upon the construction to be given certain documents.

1. On July 30, 1923, Figley-Day & Co. sold and assigned a one-half undivided working interest in the Skaggs oil and gas lease to the Mylyn Oil Company. There were then four wells on it. As a part of the consideration, the Mylyn Company agreed to drill two more wells on the lease and equip the same; to drill and equip a third well if it should be deemed necessary; and to pump and operate the wells and do all other things necessary to market the product. It also agreed to pay the royalty to the lessor and to divide the remainder of the gross receipts equally between the two companies. The entire cost of operation was to be borne by the Mylyn Company "until and except when the production" for a period of ninety days failed to bring an average of $10 per working day. It was further agreed that, after the lease failed to produce an average of $10 a day for a period of ninety days, the parties would divide equally any excess after the royalty interest had

been paid. The appellee Hill construes this conveyance and agreement as being an arrangement for the joint operation of the lease and constituting in effect a partnership of the two corporations; hence, that Hill's employment by the Mylyn Oil Company is sufficient to bind Figley-Day & Co., and also that Figley-Day & Co. is liable for his debt as a matter of equity, it being a joint owner of the property.

We do not regard the agreement of the two companies to be of a character that would bind Figley-Day & Co. for the payment of the note of the Mylyn Oil Company or the wages of the appellee as an employee of that company. It was as a consideration for the conveyance of an interest in the lease that the grantee (Mylyn Oil Company) drilled two other wells at its own expense and agreed to pay to the grantor (Figley-Day & Company) one-half of the gross oil receipts after deducting the lessor's royalty. This was but an "overriding royalty." Willis' Thornton on Oil & Gas, secs. 362, 363. The payment of the pumper's wages and other operating expenses of the Mylyn Oil Company was a part of the purchase price. It did not make the grantor liable for the debts of the grantee nor for any part of the cost of operating the lease. We cannot regard the relation as that of a partnership status. The instrument created a cotenancy in realty and nothing more. Crider v. Providence Coal Mining Company, 242 Ky. 514, 46 S. W. (2d) 1072; Kentucky Counties Oil Company v. Cupler, 204 Ky. 799, 265 S. W. 334; Willis' Thornton on Oil & Gas, secs. 659, 665.

The appellee was employed by the Mylyn Oil Company only. Figley-Day & Co. could be liable for his wages or the notes of the Mylyn Oil Company only under the doctrine of principal and agent or the existence of a copartnership of the two corporations. A careful consideration of the contract between the respective parties in connection with those doctrines does not show any right in Hill to recover of Figley-Day & Co. or to subject its interest in the property to his debt.

Nor do we think Figley-Day & Co. are chargeable in equity for the wages by reason of joint ownership, for the whole matter is controlled by the contracts—those between itself and the Mylyn Oil Company and between that company and appellee Hill. Perhaps it

might have been otherwise had Hill pursued the statutes respecting laborer's liens. Section 2479a-1 et seq.

We are of the opinion that no liability was shown on the part of the Figley-Day & Co. for the debt sued on, and judgment should have been awarded it.

2. As to the branch of the case concerning J. P. Young, the facts are: Young was the president of Figley-Day & Co., and Myers was the president of the Mylyn Oil Company. It appears that Young had a mortgage on the Mylyn Company's interest in this lease, of several years standing. On January 4, 1927, the Mylyn Company executed a new mortgage in substitution thereof to secure the payment of $7,279.72. It was upon the leasehold interest and "any equipment and property thereon and hereafter to be placed thereon, except drilling machine and machine equipment, and any property which under the terms of said agreement it may hereafter acquire an interest in." It also set apart and assigned all income from the property to be applied as a credit on the debt in accordance with the terms of an agreement executed upon the same day. That agreement was to the effect, so far as material here, that the First National Bank of Spencer, W. Va., should sell the production and credit the proceeds upon the Young note. It was further agreed, however, that the bank should deduct from the proceeds $75 each month and place it to the credit of the Mylyn Company, which sum the Mylyn Company "is under obligation to pay for the operation of said leasehold." If sales of the oil in any month were not sufficient to permit this, it should be taken care of out of subsequent revenue.

Hill claimed that this mortgage and collateral agreement created a superior lien upon the lease and production for the payment of his wages and other operating costs, and that Young personally obligated himself to pay this fund or to see that it was applied to the purposes stated; that it was created primarily for the workmen and the contract inured to his benefit. As to whether or not the contract did inure to his benefit we need not determine. The agreement respecting the collection and disposition of the Mylyn Oil Company's half of the gross revenue yielded by the operation of the lease, which had been assigned to Young before Hill's debt accrued, was scrupulously observed by the bank

as trustee and by Young. An aggregate of $3,300 was credited to the operating fund and checked out by the company from time to time. There was credited on Young's debt a total of $1,774.00. The fact that the Mylyn Oil Company diverted the money set apart for the payment of operating expenses, including appellee's wages, to other purposes, could not make Young liable for any additional sum. He did not get that money and was not bound to see that it was used for the purposes stipulated.

All of these papers were duly recorded and gave Hill constructive notice of their contents. It seems also from the evidence that he had some actual personal knowledge of the matter; consequently, the mortgage was superior to the attachment lien secured by the appellee at the commencement of his suit. Indiana Truck Corporation v. Hurry-Up Broadway Company, 222 Ky. 521, 1 S. W. (2d) 990. We cannot see any basis whatever for holding the attachment lien superior to Young's mortgage or to the mortgage of the Charleston Trust Company which also was duly recorded, except as to the chattels.

The point is made that the descriptions of the personal property in the mortgages of Young and the Charleston Trust Company are too indefinite and uncertain to give constructive notice. The description in the former is:

"Any equipment and property thereon, and hereafter to be placed thereon, except drilling machine and machine equipment, and any property which, under the terms of said agreement, it may hereafter acquire an interest in."

It is thus described in the trust company's mortgage: "Any and all equipment and property located thereon." The point is well made, and on the authority of Hart County Deposit Bank v. Hatfield, 236 Ky. 725, 33 S. W. (2d) 660, 661, we hold the appellee's attachment lien on the personal property of the Mylyn Oil Company to be superior to the claims of the mortgagees.

It is unfortunate for the appellee that he has been caught in the situation in which he finds himself. But we can see no ground for giving him relief against the appellants in this litigation, except to the limited extent

indicated. It seems to the court that the judgment upon both branches of the case is erroneous except as to the mortgages on the property which is actually personalty; but the question as to what property on the leasehold and attached is personalty is not decided.

Wherefore it is affirmed in part, and reversed in part and case remanded for consistent proceedings.