Richard W. TERRILL, Frances Terrill, Plaintiffs,

v.

A. H. CARPENTER, Margaret L. Carpenter, et al., Defendants.

No. 1037.

United States District Court
E. D. Kentucky, Lexington.

Aug. 16, 1956.

748

McCann, Sledd & McCann, Troy D. Savage, Lexington, Ky., for plaintiffs.

Shumate & Shumate, Irvine, Ky., M. A. Rowady, Winchester, Ky., for defendants.

FORD, Chief Judge.

By this action, plaintiffs seek to recover their investments, first made early in 1946 and continued from time to time for several years thereafter, in certain oil and gas leases in Kentucky on the ground that they were induced by fraudulent representations of the defendant A. H. Carpenter.

Plaintiffs' investments were in leases of lands located in Estill, Powell, Menifee, Hart and Lee Counties. Many years

previous, these counties had been subjected to considerable oil and gas exploration, with some degree of success, by methods of recovery by natural flow or by pumping, which are referred to in the industry as primary recovery methods. According to the testimony of Richard D. White, Division Exploration Superintendent for California Oil Company, who had many years of experience in such matters in Kentucky and elsewhere, "from fifty to forty per cent of the oil in place is left in the ground by ordinary, primary production methods". (Tr.Ev. p. 1055). Due, no doubt, to the prospects of recovery by deeper drilling and more modern methods, at about the time the plaintiffs invested in this area there was a resurgence of interest in exploration for oil and gas in these Kentucky counties, evidenced by the renewal of explorations by some of the major oil companies and others engaged in the industry.

█ In 1945 the defendant A. H. Carpenter, a native of Kentucky, who had been actively engaged in exploring for oil in other states, returned to Kentucky and procured leases upon a considerable acreage in the above mentioned counties with a view to engaging in further exploration for oil and gas. After ascertaining from authentic geological reports that the geological structures underlying his leases were favorable, in 1946 he started drilling upon a rather extensive scale. From time to time he sold fractional working interests in leases which he had procured and upon which he was drilling wells. This seems to be a method by which such enterprises are frequently promoted and financed. The mere assignment of a fractional working interest in such a lease, however, does not create the relation of partners or joint adventurers but only that of co-tenants or tenants in common, who ordinarily bear no part of the drilling or exploration expenses but are entitled to share proportionately in benefits derived therefrom. Young v. Hill, 247 Ky. 672, 57 S.W.2d 470, Stephens v. Allen, 314 Ky. 769, 237 S.W.2d 72, 24 A.L.R.2d 1353.

The plaintiffs, Dr. Richard W. Terrill, a physician residing at Ft. Wayne, Indiana, and his wife Mrs. Frances Terrill, were among numerous persons who, from 1946 to 1949, purchased fractional working interests in leases upon which the defendant A. H. Carpenter was engaged in exploring for oil or gas by drilling one or more wells. They also claim to have advanced to Carpenter various sums of money for the purchase of leases in acreage surrounding certain wells.

While denying all charges of fraud, the defendant A. H. Carpenter asserts (1) that due to the long lapse of time since the occurrence of the transactions alleged by plaintiffs, their claims are barred by applicable statutes of limitation, (2) that by a contract of April 10, 1951, entered into between plaintiff Richard W. Terrill and others and the defendant A. H. Carpenter, the parties fully and finally compromised and settled all controversies between them to the date thereof and released all claims against each other, and (3) that by their unequivocal acts and conduct the plaintiffs, with full knowledge of all attendant facts and circumstances, elected to enjoy the benefits of their investments and are, therefore, without right to the remedies herein sought.

We turn first to consideration of defendants' plea based upon the statutes of limitation. Section 413.120(12) of Kentucky Revised Statutes provides that an action for relief or damages on the ground of fraud or mistake shall be commenced within five years after the cause of action accrued, and section 413.130(3) provides that in an action for such relief the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake.

█ It is contended on behalf of the defendant that, although the original complaint was filed July 13, 1953, since the substituted complaint, which materially changed the relief sought, was not filed until May 12, 1954, the latter date should be considered as the date of the institution of the action now under consideration in respect to the application of

the statutes of limitation. It is made plain in the pleading that the claims asserted by the amended and substituted pleadings arose out of the conduct, transactions and occurrences set forth or attempted to be set forth in the original pleading. Under Rule 15(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the amended and substituted pleadings relate back to the date of the filing of the original pleading, July 13, 1953.

The Court of Appeals of Kentucky has frequently construed the provisions of the above statutes relating to the five year period of limitation and has uniformly held that if, from the time of the alleged fraud, the five year period is allowed to elapse, the plaintiff must allege and prove that the fraud was not only not discovered within the five year period, but that it could not have been discovered before the lapse of that period by the exercise of reasonable diligence. McCoy v. Arena, 295 Ky. 403, 409, 174 S.W.2d 726; Gragg v. Levi, 183 Ky. 182, 208 S.W. 813, and cases cited; Forman v. Gault, 236 Ky. 213, 32 S.W.2d 977; House v. Farmers State Bank, 269 Ky. 80, 106 S.W.2d 113.

 It appears from the testimony introduced on behalf of the plaintiffs that their investments in the Maloney lease in Powell County and surrounding acreage, in the Logsdon lease in Hart County and surrounding acreage, in the C. C. Frazier lease in Powell County, and their investments in the Pilot area in Powell and Estill Counties, as a whole, and specific investments in leases embraced in the Pilot area, which were the Vanderpool, the Lula Laws, the Spencer and the Nelson leases, and all transactions and occurrences herein relied upon in respect thereto, took place in the years 1946 and 1947. During these years the plaintiffs frequently visited many of the areas in which they had made their investments and observed the progress and results of drilling operations. All the wells drilled upon these leases were completed and the results known long prior to 1948. Failure of Mr. Carpenter to satisfactorily account for any money advanced for the purchase of adjoining acreage, as well as his failure to make any assignments to the plaintiffs for fractional working interests in leases to which they claim they were entitled were matters well known to plaintiffs before 1948.

If any fraud was involved in any of these transactions, the plaintiffs have failed to disclose by proof any facts or circumstances which precluded them from discovering it by the exercise of reasonable diligence before the lapse of the five year period of limitation.

In Gragg v. Levi, 183 Ky. 182, 186, 208 S.W. 813, 814, the Court held plaintiffs' claim of mistake was barred for failure to sustain the burden of proof that the mistake was not discovered and could not have been discovered by the exercise of reasonable diligence until within five years before the action was commenced and said: "Statutes of limitation are statutes of repose. Courts lend their aid to the vigilant, not to the slothful. One must act while the evidence covering the transaction is fresh and may be produced. Here one of the parties is dead; hence important evidence is hushed. There could be no better illustration of the reason for the rule and statute than furnished by the facts of this case."

This comment is especially applicable here for it appears from the record that in practically all of the transactions relied upon by the plaintiffs Joseph F. Shepperd was the active agent or representative of the defendant Carpenter. By his death, which occurred before the institution of this action, we are deprived of testimony as to many of the attendant facts and circumstances.

For the reasons indicated, we conclude that all claims of the plaintiffs resting upon and arising out of the transactions above referred to in 1946 and 1947 are barred by the Kentucky five year statute of limitation.

 Moreover, on April 10, 1951, Dr. Terrill, together with other parties having fractional working interests in

the so-called Pilot area, which by agreement had been converted into stock of the Mid-South Oil Company, entered into an agreement with the defendant. A. H. Carpenter and Joseph F. Shepperd (now deceased) whereby, in consideration of the assignment by Carpenter and Shepperd of their stock in the Mid-South Oil Company to the treasury of the company to be thereafter allocated to Dr. Terrill and the other stockholders, and in further consideration that Carpenter and Shepperd release and relinquish certain claims which they held against the corporation, they effected a full and final compromise and settlement of all controversies between them and released all claims against each other. The language in this agreement seems to be clear, explicit and unmistakably applicable to the matters herein complained of in respect to the leases and transactions involving the Pilot area. The language indicates a purpose to make an end of every matter arising under or by virtue of those previous transactions. "If parties intend to leave some things open and unsettled, their intent so to do should be made manifest." United States v. William Cramp & Sons Ship & Engine Bldg. Co., 206 U.S. 118, 128, 27 S.Ct. 676, 679, 51 L.Ed. 983.; Perkins v. Fourniquet, 14 How. 313, 55 U.S. 313, 325, 14 L.Ed. 435; St. Louis, K. & S. E. Railroad Co. v. United States, 267 U.S. 346, 349, 45 S.Ct. 245, 69 L.Ed. 649. The charge made on behalf of plaintiffs that this agreement was fraudulently procured by Carpenter is without support in the evidence.

In March 1947 Dr. Terrill and other persons owning shares in the leases embraced in the Pilot area joined in incorporating the Mid-South Oil Company and conveyed to it their respective undivided interests in the Pilot area in exchange for the stock of the corporation. Dr. Terrill was not only one of the incorporators but he was also a director of the corporation and is shown to have participated in the meetings by proxy. At that time several of the wells within the Pilot area were producing oil in paying quantities and the obvious purpose of the organization of the corporation was to provide a practical means by which the owners of the undivided interests might receive the benefits to which they were entitled, as well as bear their proportionate part of the expenses of operation. Dr. Terrill and the other shareholders received their proportionate shares of the proceeds from the oil produced for approximately five years, until the corporation was dissolved and its assets sold for a substantial price. Dr. Terrill served as the representative of the shareholders in making the sale. The charges made on behalf of plaintiffs that this corporation was a fraudulent scheme, a mere dummy to serve the interests and purposes of Carpenter, and had no legal existence seem to be without support by any proof introduced in the case and entirely without merit. So far as the testimony shows, Dr. Terrill's participation in the organization and operation of the corporation was voluntary and without duress or improper persuasion.

This brings us to the consideration of the claims of Dr. Terrill arising from the alleged investments, similar to those made in prior years, but alleged to have been made during the years 1948 and 1949, which are not affected by the five year statutes of limitation.

### Jim Hall Well

It is claimed by Dr. Terrill that on August 24, 1948, he invested $1,850 in the Jim Hall well in Powell County, which he sometimes refers to in his testimony as the "Hall-Strange" well. He gives us no information as to the nature or extent of the interest he claims to have so acquired and admits that he received no assignment or conveyance for any interest therein. He produces a check, dated August 24, 1948, drawn by him on the Lincoln National Bank and Trust Company of Ft. Wayne, Indiana, for the sum of $1,850 payable "To the order of Mr. A. H. Carpenter". (Plaintiffs' Exhibit 44). Dr. Terrill testified that he mailed this check to Mr. Carpenter. Mr. Carpenter denies that he received the

check or any amount of money on account of it. The check, though payable to his order, bears no endorsement of Mr. Carpenter or any other payee. It merely bears a perforation "Paid 8 24 48 71–27". This was the same date the check was drawn. Nothing is introduced to show that this check was ever charged to the account of Dr. Terrill by the bank upon which it was drawn. This vague evidence is insufficient to support the claim that Dr. Terrill invested in the Jim Hall well.

### Shell Palmer Lease

The testimony of Dr. Terrill as to his investment in the Shell Palmer lease in Menifee County and as to the representations made to him in respect thereto by Mr. Carpenter is as follows:

"Q. 464. Dr. Terrill, did you make an investment in Menifee County, Kentucky? A. I did.

"Q. 465. On what lease? A. On the Shell Palmer lease.

"Q. 466. Did you have any discussion with Mr. Carpenter before you invested in that lease? A. I did.

"Q. 467. What did he say to you? A. Mr. Carpenter said that he had wells in the Children's Home area and that they were very productive wells, that a number of people had tried to acquire the Shell Palmer lease which was supposedly adjoining, but Mr. Palmer refused to lease that ground to anybody. Mr. Carpenter said that he was a very unusual character and very difficult to deal with and that he had spent a lot of time and effort in getting what little good will it would be possible to get from Mr. Palmer, but even he could not lease this land as long as Mr. Palmer was alive, but, if anybody was going to get it, he was going to get it. Mr. Carpenter said he finally acquired it when Mr. Shell Palmer got drunk and fell down in the hog pen and the hogs ate him up."

A ⁵⁄₃₂ undivided working interest in this Shell Palmer lease, which had previously been assigned by A. H. Carpenter to J. F. Shepperd, was assigned to Richard W. or Frances Terrill by J. F. Shepperd on February 20, 1949. The four wells drilled by Mr. Carpenter on this lease failed to produce either oil or gas in paying quantities and they were abandoned.

### Lee County Lease

It satisfactorily appears from the record that on the 20th of June 1949 J. F. Shepperd assigned to R. W. or Frances Terrill ⁹⁄₆₄ working interest in 39 leases covering a large body of land located in Northeast Lee County, Kentucky. (Plaintiffs' Exhibit 62). This property had previously been conveyed to J. F. Shepperd by the defendant A. H. Carpenter. In respect to the representations made to him by Mr. Carpenter relative to this transaction, Dr. Terrill testified as follows:

"Q. 452. What did Mr. Carpenter say to you about this acreage in Lee County? A. Mr. Carpenter told me that there was a large plot of acreage in Lee County, between 2500 and 3000 acres, that had excellent geology, that the geology had been worked out by the University of Kentucky geological department, that the leases were expensive and called for a lot of money, that there had never been any drilling on this plot of land and there was a pure wildcat, but the geological report was so excellent that he recommended very highly my investing in this property and he recommended the drilling of two wells.

"Q. 453. Did you invest in that property? A. I did. (Tr.Ev. pp. 196–197)."

■ Under the law of Kentucky, the established doctrine in respect to proof essential to establish actionable fraud is that it must appear from the proof that the alleged misrepresentations were in respect to matters of *material* fact as distinguished from mere opin-

ion or a promise for the future; were relied upon by the person whose action was intended to be influenced; and were made with knowledge of their falsity or under circumstances which did not justify belief in their truth. Livermore v. Middlesborough Town-Lands Co., 106 Ky. 140, 163, 50 S.W. 6; Dolle v. Melrose Properties, Inc., 252 Ky. 482, 67 S.W.2d 706; Baxter v. Davis, 252 Ky. 525, 67 S.W.2d 678.

In Engemann v. Allen, 201 Ky. 483, 484, 257 S.W. 25, 26, the Kentucky Court of Appeals observed "Nothing is more uncertain than the production of oil wells, and any representation as to future production is a mere expression of opinion as to expectations and probabilities, and will not constitute fraud, even though it turn out to be untrue."

There is nothing to show that Dr. Terrill was a novice in respect to such transactions. In response to the question as to whether from the years 1946 to 1950 he had other similar transactions in the oil business, he admitted that, while he did not remember the dates, he had purchased fractional working interests in other oil fields with which the defendant Carpenter had no connection. (Tr.Ev.Vol. 6, pp. 2036–2039).

■ Testing the representations alleged to have been made by Mr. Carpenter in respect to the Shell Palmer lease and Lee County leases by the rule above stated, we are of the opinion that they do not measure up to the standard of actionable fraud and therefore constitute no basis for the claims herein asserted. It is not shown that any of the facts alleged to have been misrepresented were in respect to matters of material fact or that they were either made with knowledge of their falsity or under circumstances which did not justify belief in their truth.

The evidence is insufficient to support the claim of Dr. Terrill that he invested in the gas wells known as the James Smyth well, the Hood Wise well, the Elbert Wasson well and the Ida Barnes Nicholas well, thus rendering it unnecessary to here discuss the controver-sy disclosed in the record in respect to the failure of Mr. Carpenter to disclose to investors in those wells the facts as to the quality of gas produced or to the probable size of the gas field. It appears that such interests as Dr. Terrill acquired in gas wells were conveyed to him by Mr. Carpenter without consideration. Dr. Terrill joined with other persons interested in the gas wells in employing Harry Witt, an engineer residing at Irvine, Ky., to promote the sale of gas produced from these wells. From them, Dr. Terrill and other persons holding interests therein have ever since received the proceeds of gas sold and so far as disclosed by the record are still receiving such proceeds.

■ It appears that the unequivocal acts and conduct of the plaintiffs, by participation for many years in the benefits derived from the producing oil wells, as well as in the benefits derived from the producing gas wells, with knowledge of the attendant facts and circumstances involved in the transactions, constituted such condonement of the alleged fraud, if any existed, as to preclude the remedies which they now belatedly seek. Mackenzie v. Eschmann's Executors, 174 Ky. 450, 454, 192 S.W. 521; Cox v. Riggins, 223 Ky. 510, 4 S.W.2d 403.

■ Apart from the foregoing considerations, however, viewing the overall record in respect to the various charges of fraud upon which the plaintiffs rely, we are of the opinion that they have failed to sustain the burden of proving their accusations by clear and convincing evidence for, under the law of Kentucky, it is made clear that "Fraud will not be presumed, and one who charges fraud assumes the burden of sustaining his accusation by clear and convincing evidence sufficient to overcome the legal presumption of innocence and honesty. Fraud may be proved by positive evidence or circumstances and inferences fairly and reasonably deducible therefrom, but it may not be proved by mere inferences, conjecture, or suspicion, and, where the proven facts

or circumstances merely show inferences, conjecture, or suspicion, or such as to leave reasonably prudent minds in doubt, it must be regarded as a failure of proof to establish fraud." Goerter v. Shapiro, 254 Ky. 701, 704, 72 S.W.2d 444; Rice v. Hord, 252 Ky. 469, 472, 67 S.W.2d 715; Dennis v. Thomson, 240 Ky. 727, 736, 43 S.W.2d 18.

The foregoing conclusions render it unnecessary to consider or determine the question presented as to whether the purchase and transfer of certain stock in the South Central Petroleum Corporation in the name of Margaret L. Carpenter was in violation of Kentucky Revised Statutes, §§ 378.010–378.020.

Judgment will be entered in conformity with the views herein expressed.