HENRY J. BURWASH

*v.*

A. PERCY BALLOU *et al.*

*Opinion filed October 23, 1907.*

1. SALES—*extent of implied warranty upon sale of stock in corporation.* The vendor of stock in a corporation impliedly warrants that the stock is genuine and that he is the owner thereof and authorized to transfer title, but if the purchaser desires further protection he must exact special warranties.

2. SAME—*what is not ground for rescinding sale.* If the stock sold by one person to another was issued by a *de facto* corporation, the facts that the corporation was not a corporation *de jure,* and that the increase of stock, of which that sold formed a part, was illegally issued, do not furnish ground for annulling the sale, in the absence of special warranties by the vendor covering such facts.

3. SAME—*one seeking to rescind a sale must act promptly.* A purchaser who seeks to rescind a sale of stock, particularly mining

stock purchased for speculation, must act promptly, and will not be permitted to stand by and await the result of the investment, and if the same is unprofitable, rescind the sale for alleged fraud.

4. SAME—*"puffing" mining claims is not fraudulent representation.* "Puffing" mining claims and making glowing predictions as to how such claims will "pan out" do not amount to such false representations as will justify a court of equity in setting aside a sale of stock in a mining company, where the parties are *compos mentis* and deal at arm's length.

5. APPEALS AND ERRORS—*whether party made the alleged false representations is a question of fact.* Upon a bill to cancel a sale of mining stock for certain alleged false representations, the question whether such representations were made is one of fact; and if the evidence is conflicting, the chancellor's finding, unless clearly contrary to the evidence, will not be set aside upon appeal.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

This was a bill in chancery filed by the appellant in the circuit court of Cook county, against the appellees, to set aside a sale of seven thousand shares, of the par value of one dollar per share, of the capital stock of the International Copper and Gold Company, a corporation purporting to be organized under the laws of Arizona, made by the appellees to the appellant, at eighty cents per share, on the 15th day of July, 1903, and to enjoin the appellees from converting to their own use $1400 in cash paid on said sale by the appellant to appellees, and from transferring fifteen promissory notes, aggregating the sum of $4200, given by the appellant to the appellees in part payment for said stock, which promissory notes were not due at the time said bill was filed, and to require the appellees to re-pay to the appellant said sum of $1400 and to cause said promissory notes to be surrendered and delivered up by appellees for cancellation, on the ground (1) that said International Copper and Gold Company was not legally organized; (2) that the appellees fraudulently represented to the appellant, at

the time he purchased said stock, that said International Copper and Gold Company owned rich and valuable mines and water rights in Mexico, Colorado and Montana which were fully developed, which representations were relied upon by appellant but were known to be untrue by appellees; and (3) that the appellees represented to appellant, at the time of said sale, that said shares of stock were the stock of the International Copper and Gold Company, which were held by the appellees in trust for said company, and that the proceeds of the sale of said stock made to the appellant would be used by said company to develop the property of said company, when, in truth and in fact, said stock was the individual stock of the appellees and they were intending to convert the proceeds of said sale to their own use.

Answers were filed by the appellees admitting the sale of the stock by the appellees to the appellant, and averring that the International Copper and Gold Company was duly organized under the laws of Arizona, and that said company had the lawful right to issue the stock sold by the appellees to appellant, and denying that the appellees, or any of their agents, made any false representations to the appellant, at the time of said sale, with reference to the value of the mines or other property owned by said International Copper and Gold Company or the character of said mines, or stated that the same were fully developed, or represented to the appellant that the seven thousand shares of the capital stock of said company sold to the appellant by them belonged to said company and were held by them, or either of them, in trust for said company, or that the proceeds of said sale would be used for developing the property of said company.

Replications were filed and the cause was tried in open court, and a decree was entered dismissing the bill for want of equity, which decree, on appeal, was affirmed by the Appellate Court for the First District, and a further appeal has been prosecuted to this court.

FRANK M. BURWASH, for appellant.

HOLCOMB & McBEAN, (EDGAR BRONSON TOLMAN, of counsel,) for appellees.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

The International Copper and Gold Company was a *de facto* corporation, and the appellant having purchased its stock of the appellees, in a proceeding like this, no warranty having been made by the appellees that the corporation issuing said stock was a *de jure* corporation, the appellant cannot escape the payment of the consideration agreed to be paid by him for said stock, by showing that the International Copper and Gold Company, which issued said stock, was not legally organized, or that its increase of stock, of which that purchased by appellant formed a part, was illegally issued. (*Marshall* v. *Keach*, 227 Ill. 35.) In *Higgins* v. *Illinois Trust and Savings Bank*, 193 Ill. 394, it was held that the vendor of stock in a corporation impliedly warrants that the stock is genuine and that he is the owner thereof and authorized to transfer title, and that if the assignee desires further protection he must exact a special warranty. See, also, *First Nat. Bank of Sterling* v. *Drew*, 191 Ill. 186.

The questions whether the appellees fraudulently represented to appellant that the International Copper and Gold Company was possessed of rich and valuable mines and other property which were fully developed, and that the stock which appellants purchased from appellees was held by them, or either of them, in trust for said company, and that the proceeds of the sale of said stock to him would be used to develop the property of the company, were questions of fact. There was a direct conflict between the evidence of appellant and his witnesses and that of the appellees and their witnesses upon those questions, and the rule is too

firmly established in this jurisdiction to be shaken, that in such state of case the rulings of the chancellor who tried the case and saw the witnesses and heard them testify upon questions of fact, will not be disturbed unless it is manifest that his rulings are wrong. (*Delaney* v. *Delaney,* 175 Ill. 187; *Fabrice* v. *Von der Brelie,* 190 id. 460; *Arnold* v. *Northwestern Telephone Co.* 199 id. 201.) We have read the testimony of all the witnesses as it appears in the abstract, and are unable to point out wherein the chancellor committed error in his determination of the facts of this case. It would serve no useful purpose, therefore, to incorporate into this opinion a discussion of the complicated state of facts found in this record. In the decision of a case like this it must be borne in mind that "puffing" mining claims or making glowing predictions as to how such claims will "pan out" does not amount to such false representations as will authorize a court of chancery to set aside a sale of stock in a mining company when the parties are *compos mentis* and deal at arm's length. *Gage* v. *Lewis,* 68 Ill. 604; *Tuck* v. *Downing,* 76 id. 71; *Brady* v. *Cole,* 164 id. 116.

The sale of the stock in question was made on July 15, 1903, and the bill was not filed until August 3, 1904. In the bill of complaint appellant alleges that shortly after the payment of the second note, which fell due September 15, 1903, and which presumably was paid when due, he was put upon inquiry as to the conspiracy and fraudulent agreement entered into between the appellees and others, whereby complainant was induced and persuaded to purchase said seven thousand shares of stock; and again, that about February 1, 1904, complainant was for the first time informed and became aware that some of the representations and statements made to him by appellees were false. The rule is, that a party who desires to rescind a sale for fraud must act promptly; that he cannot be permitted to stand passively by and speculate as to the result of an investment, especially an investment in mining stock, which usually

fluctuates in value, and, after the future has disclosed his investment was a mistake, rescind the contract of purchase for fraud and recover back the consideration paid for the stock. *Greenwood* v. *Fenn,* 136 Ill. 146; *Follett* v. *Brown,* 188 id. 244; *Coolidge* v. *Rhodes,* 199 id. 24; *Grymes* v. *Sanders,* 93 U. S. 55.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*