(No. 15377.—Judgment affirmed.)
EVERETT E. DOUTHIT, Defendant in Error, *vs.* E. T.
SWINEY, Plaintiff in Error.

*Opinion filed October 20, 1923—Rehearing denied Dec. 15, 1923.*

1. SALES—*general rule is that the buyer must look out for him-self.* The general rule in case of sales is that the buyer must look out for himself, and if he takes an article on inspection or with opportunity to inspect, he buys at his peril and cannot complain if there is neither fraud nor express warranty.

2. SAME—*what amounts to fraud in sale.* False representations by the owner of a garage business as to the invoice value of the property, which are relied upon by the purchaser of a half-interest in the business, who made no investigation and had no knowledge that the representations were false, amount to fraud which entitles the purchaser to an accounting from the vendor.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Shelby county; the Hon. THOMAS M. JETT, Judge, presiding.

VAUSE & KIGER, and WHITAKER, WARD & PUGH, for plaintiff in error.

BRYAN H. TIVNEN, and CHEW & BAKER, (THOMAS R. FIGENBAUM, of counsel,) for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The plaintiff in error, E. T. Swiney, was the owner of a garage business in Windsor, in Shelby county, including a Ford agency, and in the latter part of October, 1920, he entered into an agreement with J. H. Tull, who was in the same business at that place, to sell him a half interest in the business and to form a partnership to be known as Swiney & Tull. They made an inventory and appraisement of the

stock and assets of Swiney, amounting to $28,714.63. The Swiney stock was moved into the building occupied by Tull, but the agreement failed perhaps because Tull could not pay, and the partnership was abandoned. Swiney moved his stock into a building occupied by J. Frank Rose as a garage and salesroom, and on November 12, 1920, he entered into an agreement with Rose for the sale of one-fourth of the business to Rose, in which it was agreed that the stock was valued at $28,714.63,—the amount of the Tull inventory,— and they were to be partners in the business. Rose gave his note to Swiney, due in one year, with seven per cent interest, for $7178.66,—one-fourth of the inventory. On December 8, 1920, Swiney entered into a contract with the defendant in error, Everett E. Douthit, for the sale to Douthit of one-half interest in the property and business. Swiney told Douthit that Rose, in his opinion, had nothing but a working interest in the business, and the contract with Douthit recited that the business was owned by Swiney. Douthit gave his note, with his wife as surety, for $14,375, which was stated to be one-half of the value of the business owned by Swiney, making the capital stock $28,714. By the contract Swiney and Douthit purported to become equal partners, each owning one-half of the business. About the middle of January, 1921, Swiney traded Douthit's note to John Rogers, the father of Douthit's wife, for forty-eight acres of land, which was conveyed to Swiney, and there being a difference between the purchase price of the land and the face of the note, Douthit and his wife gave Swiney a new note for the difference of about $550 and the original note was surrendered. When that transaction took place the second and third paragraphs of the contract relating to the value of the partnership property and the Douthit note were erased with ink. On March 7, 1921, Douthit and Rose filed their bill of complaint in the circuit court of Shelby county, stating the making of these contracts and charging that they had been induced to enter

into them by false and fraudulent representations of Swiney as to the inventory of assets of the business, and that he had appropriated funds belonging to the partnership far in excess of his share. The bill prayed for the appointment of a receiver, a dissolution of the partnership, and that Swiney be decreed to pay the complainants whatever might be equitably due them. Swiney answered, denying all charges of fraud, misrepresentation and misconduct. A receiver was appointed, and the cause was referred to a special master in chancery to take and report the evidence and state an account.

The special master took the testimony, and not being authorized to find or report any conclusion, submitted a report in the alternative, leaving to the determination of the chancellor the question whether there was fraud practiced as alleged in the bill, and stating an account in the event the chancellor should find that Swiney procured the contracts by fraud. As to Rose, one of the complainants, the special master found that he was unable to find that any profits were due Rose, who had never paid his note. In the decree entered the bill was dismissed as to Rose and Swiney was ordered to surrender his note. Rose was content with the decree, and the suit ended there as far as he was concerned. On the alternative report of the special master the chancellor was asked by the parties to pass upon the question of fraud, and the request was complied with. The chancellor made an interlocutory finding that the allegations of fraud alleged in the bill were proved; that Swiney induced Douthit to enter into the contract by means of misrepresenting facts; that Swiney knowingly and wantonly, for the purpose of deceiving Douthit, represented the property was worth much more than it really was; that the representations were false, as Swiney well knew, and the fraud was proved as charged. After the finding of fraud the parties agreed on all the items in dispute except three: one of $815 claimed as a credit by Swiney for a tractor and

plow; another amounting to $734 erased credits on the
back of a note; and one of $5810 for the deception and
fraud practiced by Swiney on Douthit as to the value of
the stock. There was again a hearing before the chancel-
lor on these items and an interlocutory finding overruling
exceptions to the report. The chancellor again found that
the charge of fraud was sustained; that no living man could
take the transcript and figure out exactly the true state of
the account; that Swiney thought he had made a paying
bargain by unloading a half interest on Douthit for $14,375;
that Swiney had been willing to give away one-fourth of
the business and property if anyone would dispose of the
other one-fourth interest on the same basis that he disposed
of the one-half interest to Douthit; that the item of $5810
was within the range of the evidence, and Douthit could
not be made whole if allowed that amount. Exceptions of
Swiney to the three items were overruled. A final decree
was afterward entered and Swiney appealed to the Appel-
late Court for the Third District. The Appellate Court
affirmed the decree, and this court granted a writ of *cer-
tiorari* for a review of the record.

The abstract of the record filed by the plaintiff in error
contains 97 pages, and the defendant in error filed an ad-
ditional abstract of 59 pages. The Appellate Court said
that the original abstract was a confused mass which obliged
the court to go to the record itself, where by reason of
missing invoices, missing leaves from account books, failure
to keep true and correct books of account and to enter all
the firm's transactions therein, and the appellant's confessed
failure to make an effort to keep a correct account of the
cash sales or the merchandise purchased, and also by reason
of the fact that not merely the original abstract but the ad-
ditional abstract were both incoherent, it would be impos-
sible for any court or master to state an account between
the parties which would be correct to a dollar. This state-
ment was fully justified. The original and additional ab-

stracts are confused and incoherent, and an effort to splice them together and make them dovetail so as to furnish a coherent statement of the record has been a failure. It is quite clear, however, that the alleged fraud was committed. Swiney probably cautioned Douthit to look out for himself by telling him that he could take an inventory if he cared to, or could take the property at the price agreed upon, which gave an appearance of good faith but had no effect to obviate the intentional fraud. The general rule in case of sales is that the buyer must look out for himself, and if he takes an article on inspection or with opportunity to inspect, he buys at his peril and cannot complain if there is neither fraud nor express warranty. (*Kohl* v. *Lindley,* 39 Ill. 195.) Mere commendation or expression of opinion cannot be made the basis of a charge of fraud, and as a general rule a false statement of value cannot be made the basis of such a charge. (*Burwash* v. *Ballou,* 230 Ill. 34.) False representations of material facts relating to the question of value, if relied upon with no actual knowledge that they are false, will amount to fraud. Swiney had the inventory showing value of the property and led Douthit to believe that it was true and that he was buying a one-half interest in the property of the value represented by the inventory. Swiney's offer of one-fourth to anyone who would sell the remaining one-fourth on the same basis is quite convincing of intentional fraud. Douthit did not undertake to make an investigation but relied on Swiney's representations. He was, in fact, deceived, and whether he was wise and prudent is not material. The chancellor found that Douthit would not be made whole if allowed $5810 as damages for the fraud practiced, and it appears from the figures in the report of the special master that the allowance was justified. There were two particular items objected to, one of which was $815 claimed as a credit for money received by Swiney and Douthit in payment of a note which Swiney claimed belonged to him.

The note was listed in the inventory as property belonging to the business, and it was not improper to regard it as an estoppel against Swiney. The second item of $734 was made up of credits on the back of a note given by the firm to Swiney on which the credits had been erased. It is true that erased credits may be explained, but there was no satisfactory explanation of the erasures in this case.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*