(No. 21452.—

MICHAEL PUSTELNIAK, Defendant in Error, *vs.* JOSEPH VILIMAS *et al.* Plaintiffs in Error.

*Opinion filed April 22, 1933.*

COHEN & BERKE, (HARRY F. BREWER, of counsel,) for plaintiffs in error.

E. J. HAUFLAIRE, for defendant in error.

Mr. JUSTICE JONES delivered the opinion of the court:

Michael Pustelniak, complainant, filed a bill in the superior court of Cook county against Joseph Vilimas and his wife, Jennie Vilimas, defendants, to set aside a contract between complainant and defendants for the exchange of certain real estate in Cook county and to compel a reconveyance to complainant of the premises conveyed to them under the terms of the contract. Walter Kasprzyk was afterwards made a party defendant. Joseph Vilimas and Jennie Vilimas filed answers but Kasprzyk was defaulted. The cause was referred to a master in chancery, and his report was approved. The court entered a decree setting aside the contract and canceling two promissory notes executed by complainant, one for $7500, delivered to Joseph Vilimas and Jennie Vilimas, and the other for $250, payable to Kasprzyk. The decree further provided that complainant recover from defendants, or any of them, the sum of $570 and costs of suit. It ordered that Joseph and Jennie Vilimas re-convey complainant's property to him free from encumbrances; that complainant re-convey to Joseph and Jennie Vilimas the property conveyed by them to him, subject to an encumbrance of $8500 existing when

he acquired the property, and that in case they failed or refused to make such conveyance, complainant have and recover from defendants, or either of them, the additional sum of $20,000, and that he have execution therefor. The cause is in this court on writ of error prosecuted by Joseph and Jennie Vilimas.

The testimony on the part of complainant shows he was conducting a grocery store in a building which he owned. He desired to exchange his property for a gasoline filling station. Kasprzyk, a real estate broker, had known complainant for about twenty years and had previously shown him a place in Willow Springs which complainant contemplated purchasing. Shortly thereafter Kasprzyk brought Vilimas to complainant's store to inspect that property. Complainant, Vilimas and Kasprzyk then drove over to Vilimas' property, which the latter priced at $50,000. He then offered a portion of it, consisting of four lots, with the filling station and a frame house, for $36,000. The attendant at the filling station, Malcevicus, told complainant, in the presence of Vilimas and Kasprzyk, that he was selling from eight to nine thousand gallons of gasoline per month. Neither of them disputed or qualified the statement. Vilimas told complainant that he received $50 per month rent and half the profits from the filling station and that the station was making about $500 per month. Kasprzyk made similar representations to complainant as to the amount of gasoline sold and the net profits from the filling station. He said there was a margin of six cents per gallon. Kasprzyk urged complainant to buy the property as quickly as possible before someone else did. He said it was worth $36,000; that he was not putting complainant in the hole like some other real estate men would do, and that the property was a gold mine and would make $500 per month. Complainant refused to buy, and Kasprzyk accompanied him home and again urged him to purchase the property. Complainant said he desired to think it over

for a couple of days. The next morning Kasprzyk brought Vilimas to complainant's store. Complainant was finally persuaded to enter into a contract to exchange his property at a valuation of $20,000 for the Vilimas property at a valuation of $36,000, subject to an existing mortgage of $8500, and complainant was to execute a second mortgage to Vilimas for $7500. The exchange contract was entered into on August 2, 1928, and the deeds were made on August 13. The deed from Pustelniak was made to Joseph Vilimas and his wife, Jennie, as joint tenants.

The testimony tends to show that complainant had no attorney to represent him in the transaction and that Kasprzyk suggested they go to his attorney; that they were unable to find that attorney, and Vilimas went into the People's Stock Yards State Bank, where he stayed ten or fifteen minutes, and when he came out announced that there was a lawyer there. Complainant's daughter was with him, and they, with Vilimas and Kasprzyk, went into the bank, where the contract was drawn by an officer of the bank. Complainant testified that he cannot read English and nobody read the contract to him; that when they returned to his store Jennie Vilimas signed it there; that Vilimas and his wife took possession of the store and started to invoice the stock, but said it was too much work to count it; that they put new locks on the building; that they opened the store the next morning and took charge of the business; that Vilimas took both copies of the contract, and complainant did not see or receive a copy until about two weeks after the deal was closed, when he got one from Kasprzyk's attorney; that after the contract was signed Vilimas and Kasprzyk told him the station was rented to Malcevicus and it would take a few days to get him out; that Vilimas repeatedly insisted complainant should not go to the gas station or talk to Malcevicus, stating that he could buy Malcevicus out cheaper than complainant could; that complainant went out to the station one Sunday and bought some

gas but did not get to talk with Malcevicus; that he was kept out of possession of the filling station about two weeks before Vilimas closed his trade with Malcevicus; that he paid Malcevicus $455 for the supplies on hand, of which sum he paid $350 in cash on the date he took possession, and that Malcevicus immediately handed the money to Vilimas. Malcevicus testified that complainant paid him $25 on the date he took possession and $400 on the following day. Complainant also paid $75 for legal services and paid Kasprzyk $50 as a part of his commission, giving him a note for $250 for the balance. Kasprzyk was also paid a commission of $500 by Vilimas.

Vilimas and Kasprzyk denied telling complainant or anyone else that Vilimas was receiving half the profits from the gasoline station and that it was making $500 per month. They denied telling anyone that the station was selling eight or nine thousand gallons of gasoline a month and denied they said anything about the amount of its business or profits. Malcevicus testified that just before the trade was closed complainant and his son examined the pages of his gasoline sales record. Complainant and his son denied they had ever seen such record.

Complainant introduced evidence to show that his property at the time of the transaction was worth $18,500 or $19,000, and the Vilimas property, with improvements, was worth $7000 or $8000. Two witnesses for defendants testified that $36,000 for the Vilimas property and $20,000 for the Pustelniak property were fair trade values. One of them was the owner of the second mortgage executed by complainant. Vilimas purchased the whole subdivision, consisting of seven lots, for $18,500, slightly more than one year prior to the time he traded four of them to complainant. Defendants offer no explanation for its phenomenal advance in price in so short a time.

The filling station was not selling eight or nine thousand gallons of gasoline per month. During a period of

four months next prior to the execution of the contract the monthly sales averaged less than thirty-eight hundred gallons. The margin of profit on gasoline sold was not six cents a gallon but was five cents. The net profit did not approach $500 a month, and the only income Vilimas received from the property was $50 a month rent.

Predictions of future profits and statements tending to exaggerate or boost the value of property are generally not fraudulent where the parties deal at arm's length, (*Burwash* v. *Ballou,* 230 Ill. 34,) but false representations of pre-existing material facts relating to the question of value or amount of business done, which are relied upon, with no actual knowledge of their falsity, do amount to fraud. (*Douthit* v. *Swiney,* 310 Ill. 180.) Representations by a seller that the property is doing a profitable business and that the income therefrom was a stated amount during a given period of time are material, and if false, a purchaser relying upon them may rescind the purchase. (*Bavarian Brewing Co.* v. *Farrar,* 163 Ill. 471.) Statements as to the value of property are ordinarily considered mere expressions of opinion, and for that reason are not sufficient to warrant a rescission of the contract even though they are false and relied upon by the other party, yet the rule is otherwise where the misrepresentation relates to a specific extrinsic fact which materially affects the value. If the fact is one peculiarly within the knowledge of the party making the statement, and the statement is made with the knowledge of its falsity or what the law regards as equivalent thereto, and with an intention that it shall be acted upon, and it is acted upon to the injury of the other party, the representation will amount to such fraud as will warrant a court of equity in setting aside any contract induced in whole or in part by such representation. *Douglass* v. *Treat,* 246 Ill. 593.

The testimony sufficiently shows that complainant was desirous of buying the property for the sake of its business

and profits rather than for its physical value; that Vilimas and Kasprzyk, knowing this desire, falsely represented the volume of business and the profits; that complainant relied upon such statements; that they were material representations of fact, knowingly and falsely made, which induced him to acquire the Vilimas property at a cost far in excess of its value. Any opportunity that complainant might have had to learn the falsity of the representations by visiting the filling station before completing the trade was forestalled by Vilimas insisting that he stay away from there and not talk with Malcevicus. The reason assigned was plausible and prevented investigation at the most accessible source of information. When statements are of material matters of fact which from their nature may be assumed to be within the knowledge of the party making them, the party to whom they are made has a right to rely upon them, and in the absence of any knowledge of his own, or of any facts which should arouse doubt or suspicion, is not bound to make inquiries and examination for himself. (*Hicks* v. *Stevens,* 121 Ill. 186.) A party guilty of fraudulent conduct whereby he induces another to act will not be allowed to impute negligence to the latter as against his own deliberate fraud. *Leonard* v. *Springer,* 197 Ill. 532.

It is argued by defendants that there is no evidence in the record of any false statement or misrepresentation by Jennie Vilimas and that no fraud can be imputed to her. The joint answer of defendants admits that Kasprzyk acted as their agent in the transaction. As their agent he actively participated in the fraud and misrepresentations which induced complainant to act. Mrs. Vilimas signed the exchange contract with her husband and was one of the grantees in the deed made by complainant. She and her husband received in the trade complainant's real estate and the stock of goods in his store. The value of the stock is not shown by the testimony, but they sold the real estate within

a few months for $14,000. She and her husband received the benefits of the trade. They disposed of all the property and cannot now restore it to complainant. Where a suit is brought against two or more persons for a civil wrong, it is not the conspiracy but the civil wrong resulting in damage which is the gist of the action. *Revert* v. *Hesse,* 184 Cal. 295, 193 Pac. 943.

The chancellor did not err in entering a joint decree against Jennie Vilimas and the other two defendants, and it is accordingly affirmed.

*Decree affirmed.*