**Irving S. Florsheim, Appellant, v. Gatzert Company, Appellee.**

**Gen. No. 37,330.**

Opinion filed December 19, 1934. Rehearing denied January 9, 1935.

WINSTON, STRAWN & SHAW, of Chicago, for appellant; HAROLD BEACOM, HAROLD A. SMITH and DOUGLAS C. MOIR, all of Chicago, of counsel.

SAMUEL A. and LEONARD B. ETTELSON, of Chicago, for appellee.

Mr. Presiding Justice Hebel delivered the opinion of the court.

This is an appeal by the complainant from a decree entered in the cause based upon a bill of complaint praying for the rescission of a sale by the defendant to the complainant of certain bonds known as ''Village of Dolton Improvement Bonds,'' upon the ground that fraudulent representation induced the purchase of the bonds, and that the defendant be ordered to pay the complainant $12,288, the amount received by the defendant from the complainant—the purchase price of the bonds and accrued interest.

The defendant filed its answer and thereafter the cause was referred to a master in chancery of the circuit court, and from the report it appears that upon the conclusion of the hearing the master recommended that the complainant's prayer for relief be denied. Objections were filed to the master's report, and were considered by the chancellor as exceptions to this report, and upon a hearing, the exceptions were overruled and a decree entered dismissing the bill of complaint for want of equity.

The facts appearing in the master's report are, substantially, that on January 23, 1928, the complainant bought from the defendant 12 Village of Dolton, Special Assessment Bonds, each being for the sum of $1,000, and paid therefor $12,288 for the face amount of the bonds and accrued interest. There is evidence that the defendant on January 11, 1928, mailed to the complainant a circular, which in part is as follows:

''A very unusual cushion fund will be established to further insure the prompt payment of principal and interest on these bonds, by deposit with the Illinois Merchants Trust Company, of Chicago, of a fund equal to 20% of the total bond issue. Upon delivery to us, therefore, of the $360,000 bonds, $72,000 in cash will simultaneously be deposited with the depositary which is to be used to pay for any interest or principal that

might default or for the purpose of purchasing delinquent property at tax sale.''

It further appears from this circular that Special Assessment Bonds No. 27, as well as Special Assessment Bonds No. 28 were to be protected by this so-called cushion fund. This circular was mislaid by the complainant, and upon his telephone request, Walter A. Gatzert, president of the defendant company, sent a similar circular to the complainant, which was received by him on January 13, and as he was about to leave the city, he requested Gatzert by telephone to hold $12,000 of the bonds until the complainant returned to Chicago; that upon complainant's return the bonds in question were purchased. There is conflict in the evidence as to whether the complainant purchased the bonds upon his return, relying upon the statements contained in the circular.

On November 23, 1927, two months before the bonds were purchased by the complainant, Walter A. Gatzert, as president on behalf of the defendant company, entered into an agreement with the Illinois Merchants Trust Company and Pastoret, Dorsey, Barrett Company, a copartnership, the contractors who performed the work on the improvements in the Village of Dolton for which the bonds were issued. This contract provided for the establishment of the fund with the Illinois Merchants Trust Company, and also provided that at the direction of Pastoret, Dorsey, Barrett Company, together with Gatzert Company, the funds were to be invested in the bonds, or any other securities which the parties should direct. Said agreement also provided that the accretions from the investments in that fund were to be paid to Pastoret, Dorsey, Barrett Company.

There is evidence that when the complainant learned of the agreement late in the summer of 1932, he requested a copy of the agreement from Walter Gatzert,

president of the defendant company. There was some delay in furnishing complainant with a copy of this contract until Gatzert talked with his attorney, and finally the complainant received a copy of the contract. There is also evidence that this request by the complainant for a copy of the contract was made after receipt of a letter by him shortly after July 6, 1932, which letter informed the complainant that there was $12,293.41 left in the fund to take care of defaults in the payment of principal upon the matured bonds and accrued interest.

It also appears that an issue of bonds known as County Court docket No. 57876 was also secured by the cushion fund, together with Nos. 27 and 28. It further appears that investments in the cushion fund were made, and that the total accretions from interest collected was $15,773.73. Of this amount, $8,626.91 was paid to Pastoret, Dorsey, Barrett Company, $4,200.86 was lost to the capital fund on the investments, and there was deposited over $13,000 worth of bonds other than Dolton bonds, of which $7,020 were in default, and in April, 1933, there was also included as part of the investment of the fund, $12,500 Village of Dolton bonds maturing subsequently to the defaulted bonds held by the complainant.

The first contention of the complainant is that the misrepresentation of a fact primarily within the knowledge of the party making the statement, with the intention that it shall be acted upon by a party to whom made and relied upon, constitutes fraud justifying a rescission, and in support of this position complainant relies, in part, upon the case of *Pustelniak v. Vilimas,* 352 Ill. 270, where the court held that the predictions of future profits and statements tending to exaggerate or boost the value of property are generally not fraudulent where the parties deal at arm's length; but false representations of pre-existing material facts relating to value or the amount of business done, and relied

upon by the party to whom made with no actual knowledge of their falsity, amount to a fraud.

The question resolves itself: Does the descriptive circular received by the complainant make representations that are false, and which were false when made and known to be false by the defendant, and which were relied upon by the complainant when he purchased the bond?

The evidence is that at the time of the issuance of the circular by the defendant there was established the so-called cushion fund. That being the fact, this representation was not predicated upon a fraudulent statement. The fund, as represented, was to be maintained and, according to the circular, the monies were to be used to pay any interest or principal in default, in addition to the purchase of delinquent property at a tax sale, which means that the delinquent property subject to the special assessment for the improvement in question, might be purchased at a tax sale by the use of this cushion fund.

And finally, it is represented in the circular that by the increase of the cushion fund, after a time, the deposit will equal the amount of the bonds outstanding, "assuming that there are no delinquencies." This means, of course, that if delinquency did take place, the cushion fund would not be equal in amount to satisfy the outstanding bonds when due, and that being so, the investor was informed of the possible delinquency that might arise and interfere with the payment of the bonds under discussion. However, the complainant suggests that the contract by the defendant, Pastoret, Dorsey, Barrett Company and the Illinois Merchants Trust Company was executed by the parties two months before the circular was issued and received by the complainant, and that he had no knowledge of the contract until some time after the purchase of the bonds. It is significant from the following language of the circular that further steps were necessary:

"A very unusual cushion fund will be established to further insure the prompt payment of principal and interest on these bonds, by deposit with the Illinois Merchants Trust Company, Chicago, of a fund equal to 20% of the total bond issue." This circular is silent upon what terms the 20 per cent was to be deposited with the Illinois Merchants Trust Company, Chicago, and it was a necessary incident to such deposit that a contract be entered into for the distribution of the fund. There is nothing in the circular that would indicate to a purchaser that a contract such as was entered into in the instant case would not be entered into so that the fund on deposit could be disposed of according to its terms.

The point is made by the defendant that no proper tender was made by the complainant of bonds to the defendant before institution of the suit. The rule is quite different upon this question between an action at law and one in equity. At law the complainant before instituting suit must offer to place the defendant in *status quo* in an action of this character, but in equity, based upon a like action, it is sufficient if the complainant offers to do equity. *Taylor v. Taylor*, 259 Ill. 524.

The question whether from the evidence the complainant relied upon the statements contained in the circular is not wholly important. From what we have said in this opinion upon the statements contained in the circular, the complainant is chargeable with the terms and statements, which the complainant claims he relied upon at the time he purchased the bonds in question, and our conclusion upon this question being that the complainant should have known from an examination of the circular that it would be necessary to further investigate and not rely upon the circular in its entirety, the decree will be affirmed.

*Decree affirmed.*

WILSON and HALL, JJ., concur.