Ciro Stanfa, Appellee, v. Mauriyio Buffo and Lucia Buffo, Appellants.

Gen. No. 8,895.

Heard in this court at the February term, 1935. Opinion filed May 17, 1935.

EDWARD S. FOLTZ, JR., of Rockford, for appellants.

J. E. GOEMBEL and FRANK H. HALL, both of Rockford, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

Appellee instituted this suit on January 31, 1934, to foreclose a mortgage executed by Mauriyio Buffo and Lucia Buffo, his wife, on April 2, 1932, to secure the payment of a note for $4,000 and interest thereon, due two years after date. The mortgagors, who are appellants here, filed an answer and counterclaim, alleging that the mortgage sought to be foreclosed was executed by them in renewal of a previous mortgage which they had given to secure the payment of $4,000 upon which only $650 remained unpaid. Their answer and counterclaim further alleged that at the time of the execution of the renewal note and mortgage for $4,000, they believed they were executing a note and mortgage for the true balance due, which was $650, and that the renewal note and mortgage for $4,000 was procured by fraud and by false and fraudulent representations. The answer and counterclaim admitted that there was due from them under the provisions of the mortgage sought to be foreclosed the sum of $650, with interest from December 1, 1933, and sought to have the note and mortgage described in the original complaint reformed so as to correctly show the intention of the parties. The cause was heard by the chancellor and a decree of foreclosure and sale was rendered in favor of appellee, finding the amount due him to be $4,556, together with attorney fees as provided by the mortgage. From this decree appellants have brought the record to this court for review.

The uncontradicted evidence is that appellants purchased the premises involved herein on October 2, 1926, from one Farino and that they obtained a portion of the purchase price by executing on that day their note for $4,000, due five years after date, bearing six per cent interest payable semiannually, and securing the payment thereof by a mortgage upon the premises purchased. Jasper St. Angel was at that time and for

several years thereafter engaged in the real estate business and he was named as payee in the note and mortgagee in the mortgage, and the mortgage specified that both principal and interest were payable to the order of the mortgagee at the office of St. Angel & Company, which was a corporation, Jasper St. Angel being an officer thereof. On the same day St. Angel assigned the mortgage and indorsed the note to appellee herein, but the assignment was never filed for record. For approximately five years appellants made payments of their interest monthly at the office of St. Angel and Company, paying St. Angel himself or an officer or employee of his company and also paid during this period at the same place and to the same parties $3,350 upon the principal, receiving proper receipts therefor. Jasper St. Angel paid appellee the interest on this note as in the note specified, regularly, but retained for his own use, or the use of his company, all of the principal payments which he had received from appellants. When the note and mortgage matured on October 2, 1931, there remained due from appellants thereunder only $650.

On September 16, 1931, appellants executed an agreement, which recited that the unpaid principal sum of this note was $4,000, that it would mature October 2, 1931, that the then owner was appellee and that he had agreed to extend its payment for six months. On the same day, appellants executed an interest note for $120, due April 2, 1932. On this latter date, appellants executed another note in the sum of $4,000 and secured the payment thereof by a mortgage upon the same premises covered by the prior mortgage. In this note, appellee was named as the payee and the mortgage was made to him as mortgagee, and it is this note and mortgage which forms the basis of this proceeding. Just prior to their execution, appellee, St. Angel, and appellants had several meetings and appellants were

advised for the first time that the money which they had paid to St. Angel to apply upon the principal had not been turned over to appellee, but that St. Angel had converted it to his own use. It is the contention of appellants that at the time this renewal note and mortgage were executed, they were led to believe and did believe that they were executing a note for $650 and that the execution of a $4,000 note and the mortgage to secure the payment of the same were obtained by St. Angel as agent and representative of appellee through his, St. Angel's, false and fraudulent representations.

The renewal note and mortgage were prepared by an attorney representing appellee and given to St. Angel to have executed. He took them to the home of appellants and procured their signatures thereto, and he, St. Angel, executed the certificate of acknowledgment to the mortgage as a notary public. According to the testimony of Mauriyio Buffo, St. Angel told him just prior to the time he came to their home with the renewal note and mortgage that it would have to be renewed for the balance due, which was $650, and that the new mortgage would be for $650 and would be payable to him, St. Angel, just as the first one. At the time he and his wife signed the renewal note and mortgage, he testified that he said to St. Angel: ''I'm signing for what I owed, $650.00, and St. Angel said 'Yes,' '' and relying on this statement, he signed the renewal note and mortgage. Lucia Buffo, the wife of Mauriyio, testified that before she signed the renewal note and mortgage, she also asked St. Angel if it was for $650 and he replied in the affirmative. St. Angel's version as to the renewal transaction is as follows: ''Before the mortgage was executed we had two or three meetings. Mr. Stanfa wanted to meet there (the home of appellants). Buffo said: 'I owe only $650.00.' I said, 'Yes, but this man has the whole thing coming.'

He (Buffo) said: 'I can get the money if I go to the people.' I said: 'You can't get the money because you made the payment to St. Angel and Company, but if things get better I'm going to see you get this money after a while.' They were working in the basement that day, the table was all wet, I didn't want to soil the whole thing so I folded it so they could sign it. They said they only owed $650.00. I said: 'Yes but the balance is a credit to St. Angel and Company. If things get better we can collect the money.' Mrs. Buffo said while she was signing that she only owed $650.00 and I said: 'Yes but this man has the whole thing coming.' Mr. Buffo always said he only owed $650.00. St. Angel and Company owe the money and I am willing to take the responsibility for the balance if things get better. The agreement that I should pay the difference was agreeable to Mr. Stanfa. Mr. Buffo was to pay $650.00. All of the amount paid on the principal by the Buffos was paid prior to April 2, 1932. Mr. Goembel (one of the attorneys for appellee) made out the note and mortgage for Mr. Stanfa. They asked me to act as a Notary Public because they were Italians and I would understand their language. When the mortgage was due, Mr. Stanfa wanted to know who the Buffos were and I told him. The balance due of the principal from November, 1930 to date was $650.00 and I have been paying Mr. Stanfa interest since April 2, 1932 and have paid him more than $400.00 money that St. Angel and Company had. I paid Mr. Stanfa direct and Mr. Buffo does not have anything to do or any notice that I am paying Mr. Stanfa.''

It is conceded that appellants are uneducated and could not read or write English. St. Angel was of the same race and they had implicit confidence in him. In procuring the extension agreement and the renewal of the original note and mortgage, St. Angel was acting for and on behalf of appellee, who owned the original

note and mortgage from the time it was given in 1926. He, appellee, did not file his assignment of this mortgage for record and appellants did not know who owned it. St. Angel was named therein as mortgagee and appellants made payments to him at the place where by the provisions of the note and mortgage they were to be paid. The general rule that obtains in this State is that where an assignee of a mortgage fails to notify the mortgagor of his acquisition of the mortgage, such mortgagor is entitled, in the absence of knowledge of the transfer of security to show, in equity, as against the assignee, all payments made upon the mortgage after the assignment to the mortgagee. *Daniels v. Carr,* 233 Ill. App. 531; *Towner v. McClelland,* 110 Ill. 542. From October 9, 1926, to August 9, 1930, appellants paid St. Angel, the mortgagee, $3,350 to apply upon the principal sum due from him, together with all interest due thereon. If there had been no extension or renewal of the original mortgage, and appellee was seeking to foreclose the original mortgage, the amount he would have been entitled to have decreed to him would be $650, the unpaid balance. We do not think he is in any better position because of the execution of the extension agreement or the renewal note and mortgage by appellants, or because appellants and St. Angel executed an agreement dated June 21, 1932, by which they obligated themselves to pay appellee $4,000 evidenced by the renewal note of April 2, 1932, in Italian lire. St. Angel testified that he signed this to save trouble, that it was prepared by appellee's attorney and signed by appellants in St. Angel's presence and he told them they could pay $650 they owed and St. Angel and Company would pay the balance and that appellants signed it to avoid a foreclosure. All these instruments were executed because appellants accepted St. Angel's statement that they were payable to St. Angel and that the amount stated therein was $650, the true amount. There is no reason advanced and we

can think of none, why appellants would knowingly have executed the extension agreement or the renewal note and mortgage for $4,000 when admittedly there was only $650 due from them. No consideration passed from appellee to appellants for their so doing. The last payment made by appellants upon the principal was made August 8, 1930. This payment reduced the principal to $650. On September 3, 1930, appellants paid St. Angel $3.50 on interest and a like amount on October 3, 1930. Beginning with November 3, 1930, and continuing each month thereafter until November 5, 1933, appellants paid St. Angel $3.25 regularly each month, which is interest at the rate of six per cent on $650. Appellee testified that both before and after the execution of the note and mortgage sought to be foreclosed herein, he, appellee, went to the office of St. Angel and received this interest money from him. On November 5, 1933, when the last interest payment of $3.25 was paid by appellants to St. Angel at his office the actual payment was made by James Branca, appellants' stepson, who testified that appellee was at St. Angel's office at that time and that he, Branca, gave the money to St. Angel, who gave him a receipt therefor, and thereupon St. Angel then gave the money to appellee. This is not denied by anyone.

In procuring the extension and renewal of the $4,000 mortgage, when only $650 was due thereon, appellee and St. Angel perpetrated a gross fraud on appellants, which no court of equity should countenance. In the early case of *Lockridge v. Foster,* 5 Ill. (4 Scam.) 569, the court said: ''On the principles of equity and justice, a contract, to be obligatory, must be justly and fairly made. The contracting parties are bound to deal honestly, and act in good faith with each other. There should be a reciprocity of candor and fairness. Both should have equal knowledge concerning the subject matter of the contract; especially ought all of the facts and circumstances which are likely to influence

their action, to be made known. If they have not mutually this knowledge, nor the same means of obtaining it, it is then a duty incumbent on the one having the superior information to disclose it to the other. In making the disclosure, he is bound to act in good faith, and with a strict regard to truth. If he makes false representations respecting material facts, or intentionally conceals or suppresses them, he acts fraudulently, and renders himself responsible for the consequences which may result." In 13 C. J. 371, the author of the article on Contracts states that if the other party to a written instrument induces the signer to sign the paper without reading it, and to rely on his statement, as to the contents, this may give the signer a right, if the statement was fraudulent, to avoid the contract as against him on the ground of fraud. "A false representation," continues the author, "that a writing prepared by one party embodies the terms of a previous oral agreement, inducing the other party to sign without reading the instrument, has in a number of cases been held fraud which the party misled may assert against the other. And this, although he may have been guilty of a want of prudence in relying on such representations, the underlying principle of these decisions being that the negligence of a party to a contract induced by the fraud of the other cannot be taken advantage of by the latter." See also *Pustelniak v. Vilimas*, 352 Ill. 270.

The decree appealed from is reversed and this cause is remanded to the circuit court with directions to enter a decree reforming the renewal mortgage executed on April 2, 1932, as asked for in appellants' counterclaim, and as so reformed enter the usual decree of foreclosure and sale.

*Reversed and remanded with directions.*