413 F.2d 359
 BRINK'S, INCORPORATED, a Delaware corporation, Plaintiff-Appellant and Cross-Appellee,
v.
The AMERICAN DISTRICT TELEGRAPH COMPANY, an Alabama corporation, et al., Defendants-Appellees and Cross-Appellants.
 No. 16803.
 No. 16804.
 United States Court of Appeals Seventh Circuit.
 July 17, 1969.
 
 James F. Ashenden, Jr., Thomas G. Lyons, Chicago, Ill., for Brink's Inc.
 Robert L. Stern, Roger W. Barrett, Wm. Bruce Hoff, Jr., Jack Guthman, Chicago, Ill., for defendants-appellees and cross-appellants. Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel.
 Before KILEY and KERNER, Circuit Judges, and HOLDER, District Judge.*
 KILEY, Circuit Judge.
 
 
 1
 A jury returned a verdict for defendant ADT in plaintiff Brink's' diversity suit seeking $3,500,000 compensatory and punitive damages[1] for fraud and deceit. Judgment was entered on the verdict. Brink's has appealed claiming error in the district court's instructing and re-instructing the jury.[2] We affirm.
 
 
 2
 For many years ADT has been a well-known supplier of electrical protection devices against burglars. Brink's has been similarly recognized as a protector and transporter of money and other valuables. From 1962 to 1966 Brink's also operated Brink's Signal Company, a business similar to ADT. It has also used ADT's service for many years in the United States and Canada.[3]
 
 
 3
 At its office in Syracuse, New York, Brink's used ADT's central station system to protect its vault. In this system detection devices sensitive to sound or vibration are located inside the vault and are connected by a telephone wire to an ADT central station some distance away. When a detection device is activated, it transmits an alarm signal over the telephone wire to the central station where a watchman notifies police or sends an ADT patrol to the protected area. In addition, the station watchman periodically tests the entire system by sounding a horn in the vault activating the sensing device, which in turn sounds an alarm in the central station. This periodic testing device, which succeeded in frustrating an attempted burglary in Quebec City, Canada, was in use at Syracuse to assure proper operation of the system. In October, 1965, by use of an improved electronic device, burglars overcame the testing device and circumvented the Syracuse system so that no alarm signal was transmitted to the station. The burglars then, in four hours, using the same equipment used in Quebec City, fired 20mm armor-piercing shells through the 18" reinforced concrete wall of Brink's' vault, entered and escaped with cash and checks totaling $250,000.
 
 
 4
 This suit followed, alleging ADT's deceit and misrepresentation in a statement relied on by Brink's to its damage, that the system installed at Syracuse was "invulnerable." Damages sought were the actual loss at Syracuse and Brink's' subsequent expense in providing additional protection to supplement ADT's central station.
 
 
 5
 In instructing the jury the court stated the substance of the issues, among others made by the pleadings: whether ADT had misrepresented that the device was invulnerable, and if so, whether as a reasonable and prudent man Brink's reasonably relied upon any alleged false representation. The court then gave Instruction #1,[4] challenged here by Brink's as reversibly erroneous. This instruction states the elements that must be proved by Brink's for recovery. Proposition 5 of the instruction, the prudent man test, was given over Brink's' objection and is challenged here. Brink's contends that that part of the instruction implies that if Brink's was negligent it cannot recover and that the implication violates Illinois law which governs here.
 
 
 6
 The authoritative rule is stated in Schmidt v. Landfield, 20 Ill.2d 89, 169 N.E.2d 229 (1960), that a defendant cannot interpose a defense of negligence on the part of the person to whom the false statement was made, but that the party seeking relief has to establish that he was justified in his reliance, especially where he had an opportunity to ascertain the truth and did not do so. This court in Harry Alter Co. v. Chrysler Corp., 285 F.2d 903 (7th Cir. 1961), does not state a different rule. In Alter this court, applying Illinois law, stated that
 
 
 7
 [I]t was incumbent upon plaintiff to prove by a preponderance of the evidence that a false representation was made as to some material fact, that the defendant know (sic) of the falsity and intended that plaintiff should rely upon the representation, that plaintiff, in ignorance of the falsity thereof, did rely upon the false representation, and that damage to the plaintiff resulted from its reliance thereon. Id. at 906. (Emphasis added.)
 
 
 8
 To prove ignorance of a false statement, a plaintiff must objectively show that he acted as a man of ordinary prudence in relying upon the statement's credibility.
 
 
 9
 We have read the Illinois cases cited by Brink's and ADT on the validity of the challenged instruction here. They vary in expression, but in substance state the same governing rule: Roda v. Berko, 401 Ill. 335, 340, 81 N.E.2d 912, 914 (1948) ("must reasonably believe it to be true"); Pustelniak v. Vilimas, 352 Ill. 270, 276, 185 N.E. 611, 614 (1933) ("or [the absence] of any facts which should arouse doubt or suspicion," (emphasis added) in which events the person was not bound to make inquiries for himself); Endsley v. Johns, 120 Ill. 469, 480, 12 N.E. 247, 251 (1887) ("without knowledge of the falsehood, or the present opportunity or ability of verification, and under circumstances justifying belief * * *."); Schwabacker v. Riddle, 99 Ill. 343, 346 (1881) ("ordinary prudence"); Broberg v. Mann, 66 Ill.App.2d 134, 213 N.E.2d 89 (1965) (relied on with the right to do so); Tate v. Jackson, 22 Ill.App.2d 471, 161 N.E.2d 156 (1959) (citing Endsley).
 
 
 10
 In Citizens Savings and Loan Ass'n v. Fischer, 67 Ill.App.2d 315, 214 N.E.2d 612 (1966), the court did state that a party cannot escape the legal consequences of his fraudulent conduct by saying that the fraud might have been discovered if the party whom he deceived exercised reasonable care. But the court also stated "[i]n the absence of circumstances putting a reasonable person on inquiry, a person is justified in relying on a misrepresentation of a material fact without making further inquiry." (Emphasis added.) We hold there is no merit in the contention that Instruction #1 is erroneous.
 
 
 11
 Brink's also claims error in the giving of Instruction #6[5] which told the jury in effect that fraud was never presumed, but must be proved by Brink's, that all dealings were presumptively free of intent to defraud and that as between two equally capable constructions of a transaction the law presumes that the transaction is honest and not dishonest. Brink's claims the instruction misstated Illinois law, contrary to the decisions of Endsley v. Johns, 120 Ill. 469, 12 N.E. 247 (1887), and John V. Farwell Co. v. Nathanson, 99 Ill.App. 185 (1900).
 
 
 12
 Neither of those cases supports Brink's' claim. In Farwell it is not clear that the "fifth" instruction was condemned because of a statement that the law "always * * * preferred" an honest to a dishonest motive where either was justified. In Endsley the "sixth" instruction discussed was not similar to Instruction #6 before us. We think that the instruction challenged here correctly states Illinois law. Racine Fuel Co. v. Rawlins, 377 Ill. 375, 36 N.E.2d 710 (1941).
 
 
 13
 Finally, Brink's claims error in the court's re-instructing the jury. The morning after the case went to the jury, the district court considered two questions the jury had sent to the court the previous evening: (1) "Is misrepresentation the same as fraud in this case?" and (2) "If so, can the word `fraud' be changed to `misrepresentation'?" In a colloquy with counsel for Brink's and ADT, the court said arguments of counsel to the jury "must have misled the jury," but proposed not to directly answer the questions. The court upon examining the instructions said that #6 had "mixed up the jury" and that ADT should not have given it to him. Brink's' counsel suggested only adding an instruction that omissions could be construed as misrepresentations.
 
 
 14
 The court re-read Brink's' burden of proof instructions, the proximate cause instruction which used the term "fraudulent misrepresentations" four times, an instruction that omissions could be considered misrepresentations, another that a party has a duty to use reasonable care to disclose information, and ended by re-reading Instruction #6.
 
 
 15
 Brink's argues that merely re-reading #6 which had "mixed up" the jury was erroneous because it did not clear up the confusion. It relies upon this court's decision in United States v. Harris, 388 F.2d 373 (7th Cir. 1967), and Powell v. United States, 347 F.2d 156 (9th Cir. 1965), cited by this court in Harris, to sustain its claim of error in re-instructing the jury. Both Harris and Powell are criminal cases. Harris involved a thirteen count indictment charging four defendants with substantive and conspiracy offenses. The reading of instructions there consumed three hours and ended at 11:00 p.m. The next day the jury stated the reading of instructions was so rapid it did not understand some, and that the jurors were not clear about what findings they could make in the various counts. This court thought the original instructions were insufficient, and that re-reading of them did not meet the test announced in Powell. Quoting from Bollenbach v. United States, 326 U.S. 607, 613, 66 S.Ct. 402, 90 L.Ed. 350 (1946), the court in Powell required the judge to have cleared away with "concrete accuracy" a jury's difficulties. It held this test had not been satisfied by a re-reading of a prior instruction on evidence of intent, because the instruction was unresponsive to the jury's questions, and may have led the jury to apply an improper standard.
 
 
 16
 Brink's argues that, as the court thought in Powell, the re-instruction induced the jury here to apply an improper standard of proof. The district court however re-read the burden of proof instruction and it is unlikely that the jury did not apply that standard. Since we have held Instruction #6 to be a correct statement of the law, a re-reading of it could not have misled the jury.
 
 
 17
 Moreover, Brink's did not move or request to withdraw Instruction #6. It did not object, specifically, to a re-reading of Instruction #6, which might have led the district court to reconsider its method of removing the jury's confusion. Brink's entered nothing more than a "perfunctory objection." The "concrete accuracy" test stated in Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946), a criminal case, if urged by Brink's at the trial, might have led to an unobjectionable response to the jury's question. We think it is too late now.
 
 
 18
 The judgment is affirmed.
 
 
 
 Notes:
 
 
 *
 Judge Holder, from the Southern District of Indiana, is sitting by designation
 
 
 [1]
 This was the posture of the case when submitted to the jury. Both parties amended original pleadings. The court denied ADT's motions for directed verdicts after plaintiff rested and after both sides rested
 
 
 [2]
 ADT has cross-appealed from a denial of its motion for a directed verdict. Prior to oral argument, Brink's filed a motion to dismiss the cross-appeal. On July 12, 1968, this court ordered that Brink's' motion be taken with the case. In view of our decision sustaining the judgment entered on the jury verdict, we need not decide the cross-appeal or Brink's' motion. Both are now moot
 
 
 [3]
 A Brink's subsidiary in Canada uses protection services rendered by an ADT controlled Canadian corporation
 
 
 [4]
 "You are instructed that as a matter of law before the plaintiff can recover a verdict against the defendants in this case it must prove by a preponderance of the evidence each of the following propositions:
 (1) that A.D.T. misrepresented its electric burglary protection system to be invulnerable;
 (2) that such representation was false;
 (3) that such representation was known by A.D.T. to be false when made;
 (4) that Brink's was deceived by the representation and relied thereon;
 (5) that the representation was such as a man of ordinary prudence would rely upon; and
 (6) that A.D.T.'s representation was the proximate cause of plaintiff's losses.
 "If you find from the evidence that the plaintiff has proven each of these six propositions by a preponderance of the evidence, then you should return a verdict for the plaintiff.
 "If, on the other hand, you find from all of the evidence that the plaintiff has failed to prove any one or more of these six propositions, then you must return a verdict for the defendant."
 
 
 [5]
 "Finally, ladies and gentlemen, fraud is never to be presumed, but must be proved affirmatively by a preponderance of the evidence, by the party alleging the same
 "The law presumes that all men are fair and honest, that their dealings are in good faith, and without intention to disturb, check, hinder, delay or defraud others.
 "If any transaction called in question is equally capable of two constructions, one that it is fair and honest, and the other that it is dishonest, the law is that the transaction in question is presumed to be honest and fair."